## THE CHICAGO CITY RAILWAY COMPANY

*v.*

## JOIE E. SHREVE.

*Opinion filed April 18, 1907.*

1. ARREST OF JUDGMENT—*all intendments are in favor of declaration after the verdict.* Upon motion in arrest of judgment, the court will intend that every material fact alleged in the declaration, or fairly or reasonably inferable from what is alleged, was proved on the trial.

2. PLEADING—*when count is sufficient after verdict.* A count in a declaration against a street railway company for injuries to a passenger in consequence of a collision between the defendant's car and a team crossing the track on a driveway, which alleges a use of such driveway for teams for a long time prior to the happening of the accident, is sufficient after the verdict, even though the extent of such use, whether frequent or merely occasional, is not averred.

3. STREET RAILWAYS—*a company must use high degree of care for safety of passengers.* A street railway company is bound to use a high degree of care to safely transport its passengers, and to that end must do all that human care, vigilance and foresight can reasonably do, in view of the character and mode of conveyance adopted and consistent with the practical operation of its railway.

4. SAME—*what acts constitute the care required by street railway company is a question of fact.* Whether or not the care required of a street railway company for the safety of its passengers demands that it keep a flagman or signal device to give warning of the approach of teams on a driveway coming through an opening in a high wall close to the track is a question of fact for the jury, where the evidence as to the facts and the extent of the use of the driveway is conflicting.

5. SAME—*when instruction defining carrier's duty to passenger is not erroneous.* An instruction requiring a carrier to do for the safety of its passengers all that human care, vigilance and foresight can reasonably do, "under the circumstances and in view of the character and mode of conveyance adopted," is not erroneous in failing to include the further qualification that such care be consistent with the practical operation of the road, where other instructions fully supply such element. (*Tri-City Railway Co.* v. *Gould,* 217 Ill. 317, distinguished.)

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

This is an action on the case commenced by the appellee, against the appellant, in the superior court of Cook county, to recover damages for a personal injury alleged to have been sustained by the appellee while a passenger upon one of the cars of the appellant, in consequence of the collision between said car and a truck wagon drawn by two horses upon one of the public streets in the city of Chicago. The case was tried before a jury and resulted in a verdict in favor of the appellee for the sum of $2500, upon which the court, after overruling a motion for a new trial and in arrest of judgment, rendered judgment, which judgment has been affirmed by the Appellate Court for the First District, and a further appeal has been prosecuted to this court.

The declaration contained three counts. The first count alleged that on the 19th day of August, 1901, the defendant was possessed of and was operating a certain street railway running north and south on Clark street, then and there a public highway in the city of Chicago, upon which railway it operated certain passenger cars as a common carrier for the conveyance of passengers for hire, and that at the time and place aforesaid the plaintiff became and was accepted by the defendant as a passenger for hire on one of its said passenger cars which it was then and there operating along its said railway in a southerly direction and then and there paid to the defendant her fare as such passenger, and that while she was riding, as such passenger, in said street car upon said street railway in the vicinity of Fourteenth street, and exercising ordinary care for her own safety, the defendant, through its servants in charge of the operation and management of said car, so carelessly and improperly ran, managed and operated said car that as a result and in con-

sequence thereof said car thereby then and there ran into and collided with a certain wagon then upon said railway track, and the plaintiff was thereby then and there thrown violently against a portion of said car, and her left arm and shoulder were thereby then and there severely and permanently injured, and divers bones of her body were thereby then and there sprained, dislocated and broken, and she was thereby severely and permanently injured, etc.

The second count was identical with the first count, with the exception that it alleged the plaintiff, at the time she was injured, "was the proprietress of and conducting a dressmaking establishment, from which she derived a profit of, to-wit, $20 per week."

The third count, after showing that appellant was engaged in operating an electric street car line in the city of Chicago and that the plaintiff was a passenger upon one of its cars for hire, alleged that there was located upon the west line of Clark street, between Thirteenth and Fourteenth streets, a certain high wall running parallel with and but a few feet west of said south-bound track, and that there was a certain opening in said wall which connected with a certain plank roadway laid from said Clark street through said opening westward to a certain freight or dock house situated upon the bank of the Chicago river, and that long prior to and at the time and place in question said opening and roadway were used for teams and wagons in going from Clark street to or near said freight or dock house and from and near said freight or dock house to Clark street, and in each case they were required to cross defendant's south-bound track, and that by reason of the height of said wall and of the proximity of the defendant's south-bound track thereto, its servants in charge of its south-bound cars were unable to discover teams attached to wagons being driven easterly along said roadway towards and through said opening into Clark street until said teams and wagons were almost upon the track upon which said south-bound cars were running,

which made said crossing a dangerous place, where collisions between defendant's south-bound cars have occurred and were likely to occur, all of which facts the plaintiff alleged were known to the defendant or by the exercise of due care in that regard should have been known to it; and that by reason of the premises it was the duty of the defendant to its passengers for hire on its south-bound cars to have maintained a flagman, signal device or other suitable appliance at said opening to warn its servants in charge of its south-bound cars when a team or wagon was being driven towards and about to pass through said opening into Clark street, and that in the absence of such flagman, signal device or other appliance there was danger of its south-bound cars, or some of them, colliding with teams and wagons being driven along said roadway and through said opening into Clark street, but that the defendant, not regarding said duty, negligently failed and neglected to maintain a flagman, signal device or other suitable appliance at said opening in said wall for the purpose aforesaid; and that at the time aforesaid the plaintiff became and was accepted by the defendant as a passenger for hire on one of its said street cars which it was then and there operating southerly along said south-bound track, and that while plaintiff was riding, as such passenger, in said street car upon said south-bound track along said wall and approaching said opening in said wall, and while she was exercising due care for her own safety, a certain team of horses hauling a heavy truck wagon was being driven along said roadway easterly towards and through said opening in said wall and across said street car tracks, and that as a result of and in consequence of the defendant's failure to maintain a flagman, signal device or other suitable appliance at said opening for the purpose aforesaid, defendant's servants in charge of said car did not learn of the approach of said team and truck wagon in sufficient time to stop the car, and as a result and in consequence thereof said car then and there collided with great

force and violence with said truck wagon so being driven through said opening and across said track, as aforesaid, and as a result and in consequence of said collision plaintiff was then and there thrown violently against a certain portion of said car, and her left arm, shoulder and side were thereby injured, etc.

The general issue was pleaded to the declaration, and at the close of the plaintiff's evidence, and again at the close of all the evidence, the appellant made a motion that the jury be instructed to find for the defendant, which motion was denied by the court, whereupon the appellant asked the court to give to the jury the following instruction:

"Defendant cannot be held liable in this case for not maintaining a flagman, signal device or other such appliance at the opening in the wall in question, to warn its servants in charge of its south-bound cars when a team or wagon was approaching towards and about to drive through said opening into Clark street. Under the law and the evidence of this case defendant did not owe a duty to maintain a flagman, signal device or other such warning appliance at said opening."

This instruction the court declined to give to the jury.

The evidence was conflicting. That, however, introduced on behalf of the appellee fairly tended to show that the appellee, on the 19th day of August, 1901, in company with her daughter, took one of appellant's south-bound electric cars in the down-town district of the city of Chicago to go to her home on Wentworth avenue, in the south part of the city. The car was an open car, with seats running crosswise of the car and facing each other. The appellee and her daughter occupied the west end of the first seat in the rear of the motorman. They faced towards the rear of the car, the daughter occupying the end seat. The car passed south upon Clark street, and as it approached Fourteenth street a team hitched to a heavy truck wagon was driven from the west upon the car line of appellant through an opening in

the stone wall standing upon the dividing line between the west line of Clark street and the Lake Shore and Michigan Southern and other railroad tracks situated at that place. The stone wall stood about two feet west of the west rail of the street car line. The motorman saw the team as it emerged from the opening when the car was some twenty-five feet north of the opening and did what he could to stop the car, but without avail. The car struck the wagon on the north side, between the wheels, with such violence that the wagon was pushed westward and wedged in between the wall and the car. The wagon was crushed and broken, the car was disabled, and the wrecking wagon and crew of appellant were called to clear the track. The driver of the team, and the man with him, were thrown from the wagon to the ground, and the shoulder, arm and chest of the appellee were bruised and injured.

The opening in the stone wall had existed, substantially as it was on the day of the injury, for a number of years, and while it had a sign over the top or on the side which indicated that it was for the use of fire engines only, and had a gate by which it could be closed, it was planked as a roadway. The gate was usually open, and the roadway through the opening was in use by grocerymen, butchers and draymen as a means of entering the railroad right of way, which roadway at that point across the railroad grounds was used by parties for the purpose of driving upon from Clark street to buildings, dock houses, etc., situated upon the Chicago river near by, to deliver groceries and meat and receive freight from boats which were lying in the Chicago river, the distance from Clark street to the Chicago river at that point being something like two hundred feet, and the opening had been in frequent use as such means of ingress and egress for teams for many years. The team attached to the truck with which the car collided had been driven through the opening on its way to the river about thirty minutes before the accident and was returning

to the street at the time of the collision. The car was running at full speed as it approached the opening and the gong was not sounding.

WILLIAM J. HYNES, and C. LEROY BROWN, (MASON B. STARRING, of counsel,) for appellant.

JAMES C. McSHANE, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

It is first contended that the third count of the declaration does not show any duty resting upon the appellant to protect the appellee from injury consequent upon the collision of its car with said truck wagon at the opening in said wall, as it is said that count of the declaration does not show that said opening was in frequent use by teams as a passageway from Clark street to the Chicago river, and that from the averments of that count its use may have been only an occasional use and teams may have passed through it only a few times and at rare intervals, in which event the appellant would not have been required to take notice of its dangerous condition as a means of egress from and ingress to Clark street to said railroad grounds over appellant's tracks, and that by reason of want of such notice the appellant was not required to take steps to guard against the injury of its passengers at that point, arising from collisions between its cars and passing teams and wagons. The sufficiency of the declaration was not challenged by demurrer, and the only action of the appellant questioning its sufficiency was by its motion in arrest of judgment. No defect is pointed out in the first count of the declaration, and while the negligence charged in that count is general, after verdict it was clearly sufficient to support a judgment in favor of appellee. (*Chicago City Railway Co.* v. *Jennings,* 157 Ill. 274; *Illinois Central Railroad Co.* v. *Weiland,* 179 id. 609; *Chicago General Railway Co.* v. *Carroll,* 189 id. 273.) We are also of the opinion that the third count, after verdict, when tested by motion in

arrest of judgment, was sufficient to support the judgment
in favor of the appellee. (*Gerke* v. *Fancher,* 158 Ill. 375.)
That count averred the existence of the opening in the wall,
that it connected with a plank roadway laid from Clark
street through said opening westward to the freight house
or dock house at the Chicago river, and "that long prior to
and at the time and place in question said opening and road-
way were used by teams and wagons." While the extent
of the use of the passageway through the opening is not
averred and upon demurrer the averment might have been
held to be insufficient, on motion in arrest of judgment the
rule is different. The court will intend that every material
fact, upon motion in arrest of judgment, alleged in the dec-
laration or fairly or reasonably inferable from what is al-
leged was proved on the trial. *Pennsylvania Co.* v. *Ellett,*
132 Ill. 654.

It is next contended that the court erred in declining to
take the case from the jury, and in refusing the instruction,
after the motion for a peremptory instruction had been over-
ruled, that the appellant could not be held liable for a failure
to maintain a flagman, signal device or other such appliance
at the opening in the wall to warn its servants, as its cars
approached the opening, when a team or wagon was about
to drive upon its south-bound track through the opening.
Two grounds of negligence are relied upon as a basis of
recovery: First, the failure of defendant, through its ser-
vants, to approach the opening in the wall with its cars with
such diligence as would enable it to discover the approach
of a team and wagon in case the same were about to pass
through the opening in front of its moving cars; and sec-
ondly, the failure to maintain at the opening a flagman or
signal device or other appliance to give warning of an ap-
proaching team. The opening had been in the wall for a
number of years. It was planked and connected with the
driveway upon the railroad grounds leading to the river
west of the opening. It had been used as a passageway for

teams attached to vehicles for many years, which use was frequent. The wall was so high that an approaching team from the west could not be seen by the servants of appellant in charge of its cars or appellant's cars discovered by the driver of the team. We think, therefore, it was a question of fact for the jury, in view of all the circumstances disclosed by the evidence, to determine whether the appellant knew or ought to have known of the condition of said opening and driveway, and whether it was guilty of actionable negligence in approaching the opening with its car in the manner in which it did on the occasion of the injury to the appellee, or whether it had taken such reasonable precaution to warn its servants of the approach of teams through said opening as would reasonably guard its passengers from being injured by its cars coming in collision with such teams. The appellee was guilty of no wrong, and the obligation rested upon the appellant to use a very high degree of care to safely transport her upon its car, and it was required, in law, to do all that human care, vigilance and foresight could reasonably do, in view of the character and mode of conveyance adopted, consistent with the practical operation of its cars, to safely carry the appellee; (*North Chicago Street Railroad Co.* v. *Polkey,* 203 Ill. 225; *Tri-City Railway Co.* v. *Gould,* 217 id. 317;) and whether it used such care and performed the duty which it owed the appellee at the time of the collision between its car and said truck wagon, in view of the conflicting evidence, was a question of fact. We think the court properly declined to take the case from the jury, and did not err in declining to instruct the jury that the appellant was not liable to the appellee by reason of the failure on its part to maintain a flagman, signal device or other such appliance at the point where teams came upon the track through the opening in said wall.

It is further contended that the court erred in giving to the jury the appellee's second instruction, which reads as follows:

"The court instructs the jury that it is the duty of common carriers to do all that human care, vigilance and foresight can reasonably do, under the circumstances and in view of the character and the mode of conveyance adopted, reasonably to guard against accidents and consequential injuries, and if they neglect so to do they are to be held strictly responsible for all consequences which directly flow from such neglect, (provided such neglect and consequence is alleged in the declaration and is established by the proofs;) that while the carrier is not an insurer of the absolute safety of the passenger, it does, however, in legal contemplation, undertake to exercise the highest degree of care to secure the safety of the passenger and is responsible for the slightest neglect resulting in injury to the passenger, (provided such neglect and injury is alleged in the declaration and is established by the proof,) if the passenger is at the time of the injury exercising ordinary care for his own safety."

The criticism made upon this instruction is, that it does not limit the degree of care required of the appellant to such care as is consistent with the practical operation of its street car line. In *Tri-City Railway Co.* v. *Gould, supra,* such limitation was held necessary, and for a failure to include such limitation in the instruction that case was reversed. The instruction in the case at bar, defining the degree of care required of appellant, differs from the instruction given in the *Gould case* in this: That the instruction in this case requires appellant to use only such care as it could reasonably use *under the circumstances,* which italicized words were omitted from that instruction, and in this case the jury were repeatedly informed by instructions given on behalf of the appellant that it was bound to use only such care as was consistent with the practical operation of its street car line, and it does not appear that any instruction of like effect was given on behalf of the defendant in the *Gould case.* It has been repeatedly held by this court that where an instruction does not direct a verdict, or amount to such direction, it may

be supplemented by other instructions in the case, and that where, in such case, the instructions, when considered together and as a whole, correctly state the law upon a given subject, an omission in any one instruction in the series will be cured if the instructions, as a series, are correct. ·(*Pardridge* v. *Cutler,* 168 Ill. 504; *Montgomery Coal Co.* v. *Barringer,* 218 id. 327.) We think, when the second instruction given on behalf of the appellee is considered in connection with the instructions given on behalf of the appellant, that the jury were not misled as to the degree of care which the appellant was bound to use in operating its cars at the time the appellee was injured. The instruction above referred to, with the exception of the parts thereof enclosed by parentheses, was approved in the case of *Chicago and Alton Railroad Co.* v. *Byrum,* 153 Ill. 131.

The appellee claimed, and sought to show on the trial, that she was suffering from paralysis as a result of the injury which she sustained at the time of the collision between the street car and the truck wagon, and she called a number of medical experts as witnesses on her behalf, who testified that in their opinion such was the fact. From their testimony it appeared that they had talked with the appellee, and made experiments, by sticking pins in her flesh and manipulating her limbs, to determine whether or not she was feigning paralysis, and it is urged that the court erred in permitting such facts to go to the jury and in permitting such witnesses to state to the jury their opinions as to appellee's condition, based upon subjective, rather than objective, conditions. We have read the evidence of those witnesses in full as it appears in the record, and do not think their evidence, or the rulings of the court in admitting the same, subject to the criticism made thereon. The court repeatedly informed the witnesses that they were to base their opinions only upon what they had, seen, and not upon any statements made to them by the appellee or upon any physical manifestations of the appellee within her control, and in

order to more fully exclude from the consideration of the jury all such statements, experiments and manifestations, the court gave to the jury, at the instance of the appellant, an instruction which excluded specifically all evidence from the consideration of the jury which could by any possibility be regarded an infringement of the rule against the consideration by them of any subjective condition in the appellee brought out during the examination of the expert witnesses.

It is also said that the judgment should be reversed by reason of certain errors which it is urged were committed during the course of the trial, viz., alleged misconduct of the attorney for appellee, misconduct upon the part of the trial judge and misconduct on the part of the jury during the trial. The present trial was the third trial of the case, two juries having previously disagreed, and from the commencement of this trial to its close there was a persistent effort on the part of the attorneys representing the respective parties to bring before the jury certain facts and circumstances which were deemed by the trial court entirely foreign to the proper presentation of the case to the jury, and the rulings of the trial judge were frequently evaded or disregarded by the attorneys of the respective parties. During the long trial, which covered a period of ten days, at times the jury apparently participated somewhat in the feeling and excitement incident to the trial. The trial judge, however, appears to have ruled fairly on the questions presented to him for decision during the trial, and the only criticism, if any, to which he should be subjected is, that he did not use the power vested in him by the law to enforce prompt obedience to his rulings. We think the case was not conducted by the counsel engaged in the trial thereof in the manner in which a case should be tried in a court of justice. The fault, however, was not all on one side, and we are not disposed to reverse the case on account of the misconduct of counsel.

There are other errors assigned upon the record and discussed in the briefs, such as that the court erred in not dis-

charging the jury during the trial on the ground of bias and prejudice against the appellant, upon its motion; and that the jury, by questions asked of witnesses while they were giving their testimony upon the witness stand, showed that they were prejudiced against the appellant and disqualified; and that the court erred in declining to discharge the jury within a reasonable time after they had retired to consider their verdict, on the motion of appellant; and that the court erred in the manner in which the jury were directed to be polled after they had returned their verdict into court. All of these questions have been carefully considered, but we have discovered no error in this record which we think should work a reversal of the judgment rendered by the trial court.

The judgment of the Appellate Court will therefore be affirmed.                                    *Judgment affirmed.*