Birdie Van Hoorebecke, Appellant, v. Iowa Illinois Gas and Electric Company, Appellee.

Gen. No. 9,982.

Opinion filed September 19, 1944. Opinion modified and rehearing denied November 20, 1944. Released for publication November 20, 1944.

EAGLE & EAGLE, of Rock Island, for appellant.

KENWORTHY, HARPER, SOLLO & GRAHAM, of Moline, for appellee; S. R. KENWORTHY and R. G. GRAHAM, of Moline, of counsel.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

Appellant sued appellee in the circuit court of Rock Island county to recover damages on account of injuries sustained when she slipped and fell on an icy sidewalk in the City of Rock Island, while walking toward a bus of appellee with the intention of boarding the same, and which, because the traffic was blocked, had stopped a short distance south of the street corner where it usually stopped. Appellant bases her suit upon an alleged invitation by appellee to enter the bus at the place where it stopped, and the claim that she was at that time a passenger of appellee. Appellee denies any such invitation, and denies that she was its passenger at the time of the accident.

At the close of the testimony for appellant, the trial court denied appellee's motion for an instructed ver-

dict in its favor, and at the close of all the testimony, took a like motion under advisement, and the cause went to the jury, which returned a verdict for $500 in favor of appellant. She filed a motion for a new trial on the ground of gross inadequacy of the verdict under the evidence. Appellee did not file any motion for a new trial, but filed a motion for judgment notwithstanding the verdict. The court granted the motion for a directed verdict, which had been taken under advisement, and entered judgment for appellee notwithstanding the verdict in bar of the action. The cause is here by an appeal from that judgment. No cross-error is assigned by appellee.

The grounds urged for reversal are, that the trial court erred in sustaining the motion for a directed verdict, and in entering judgment notwithstanding the verdict, and that a new trial should be granted. Appellee contends that there was no proof of actionable negligence on its part, or that anything it did was the proximate cause of appellant's injury; that she was · guilty of contributory negligence; and that her proofs fail to establish the cause of action averred in the complaint.

A motion for a directed verdict, either at the close of the testimony for the plaintiff, or at the close of all the testimony, or a motion for judgment notwithstanding the verdict, all raise the same question. (*Merlo v. Public Service Co. of Northern Illinois,* 381 Ill. 300, 311.) Such motions are in the nature of a demurrer to the evidence, and present only a question of law as to whether, when all of the evidence is considered, together with all reasonable inferences drawn therefrom, in its aspect most favorable to the plaintiff, there is evidence tending to prove any cause of action stated in the complaint. If there is, the motion should be denied, and the weight and credit to be attached to it in connection with the other facts and circumstances shown are questions for the jury, even though, upon

the entire record, the evidence may preponderate against the plaintiff so that a verdict in favor of the plaintiff cannot stand when tested by a motion for a new trial. (*Todd v. S. S. Kresge Co.*, 384 Ill. 524, 527; *Walaite v. Chicago, R. I. & P. Ry. Co.*, 376 Ill. 59, 62; *Bartolucci v. Falleti*, 382 Ill. 168, 173.) Under a motion for a directed verdict, or for judgment notwithstanding the verdict, the court does not weigh the evidence, and has no power to determine the weight and preponderance of conflicting testimony. (*Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300; *Minnis v. Friend*, 360 Ill. 328, 336.)

The accident happened at about 10 o'clock a. m. on December 17, 1942. Appellant, an employee of the LeClaire Hotel in Moline, was accustomed to go to work by bus from her home on 11th street in Rock Island, transferring from one bus to another at the intersection of 16th street and 2nd avenue in Rock Island. Sixteenth street runs north and south and 2nd avenue runs east and west. On the morning of the accident she boarded a bus in front of her home, paid her fare, and received a transfer. She left the bus at the southwest corner of the intersection mentioned, and walked east across 16th street to the southeast corner, to wait for the bus which would take her to Moline. As she waited for the bus she stood on the sidewalk on the east side of 16th street. The sidewalk is about 14½ feet wide, and there was a yellow line on the curb marking the bus stop zone. The yellow line began at the south property line of 2nd avenue and extended south 50 feet, and at the time of the accident it was obscured by the ice on the sidewalk. There is a fire hydrant about one foot south of the north end of the line, and an iron pole six feet south of the fire hydrant. Immediately south of the bus stop zone was a parking space for cars, extending to the alley. The pleadings agree that there was in effect an ordinance of the City of Rock Island, which provided "that all

motor buses shall make their stop to load or discharge passengers at the curb on the near side of the street, and within sixty (60) feet from the near curb line of the intersecting street; said sixty (60) feet to be properly marked.''

The complaint alleges that appellee was under a duty to obey the ordinance, and was also under a duty to stop its bus where passengers could board the same with reasonable safety; that regardless thereof, the driver of the bus in controversy stopped it away out from the east curb of 16th street, approximately one-half block south of the south line of 2nd avenue, and then invited appellant to board the bus; that she accepted the invitation, and in attempting to board the bus, she slipped and fell; that as a result thereof, she suffered a broken back, permanently disabling her; and that she had incurred medical and hospital expenses, and had lost and would in the future lose her wages, laying the *ad damnum* at $100,000. The nature and extent of her disability is not questioned.

Appellant testified that she had on a heavy fur coat and galoshes; that as she waited for the bus she stood on the sidewalk (on the east side of 16th street) a little way out from the window on the west side of a furniture store, and that the fire hydrant and the pole were west of her, and that if the bus had stopped where it usually did, she would have gone straight west to get aboard; that there were two or three cars parked along the east curb of 16th street, and that she was not paying exact attention to them, but thought they were parked in the space where the bus usually stopped, the car farthest north being parked somewhere around the post and fire plug; that a bus marked ''Garage'' stopped back of those cars, but did not take on passengers; that the bus she intended to take stopped back of the first bus, south of the crosswalk a distance equal to the length of two or three cars and the length of the bus marked ''Garage'' and about a car's width

out in 16th street; and that the driver honked the horn and opened the door; that she and two or three others ahead of her started walking diagonally south to get onto the bus, but not until the bus had stopped and the driver honked the horn; that she took six, eight or ten steps, walking carefully, because she knew the sidewalk would be icy and slippery, and her feet slipped from under her and she sat down hard, about eight or ten feet from the post, closer to the curb than to the middle of the walk; that meanwhile, the bus marked ''Garage'' had gone on, and the bus that she intended to take came up to the corner, with the front door north of the fire hydrant, about the width of an automobile from the curb, out in the street, and the cars were still parked toward the curb, in the bus zone, so that it was necessary for her to go out into the street in order to get on the bus, to accomplish which, she was helped by others. She further testified that she had not previously slipped on that day.

The driver of the bus testified that he turned into 16th street at the next corner south of the 2nd avenue intersection, and stayed there until the bus marked ''Garage'' left the intersection at 2nd avenue; that there were cars parked on the east side of 16th street up to the line of the bus zone; that he could not enter the zone because a private car had entered it when the ''Garage'' bus left, and stood about a bus' length, approximately 30 feet north of the nearest parked car; that someone ran across 16th street from the post office on the southwest corner, and entered the private car, behind which the bus had stopped; that he honked the horn a couple of times for the private car to move on, which it immediately did; that he did not open the door of the bus when he stopped behind the private car, but opened it when he was within two or three feet south of the point where he stopped for appellant whom he observed sitting on the curb with her feet in the street, immediately south of the iron pole; and

that he opened the door in order to see the curb and get right up to it, so that she would not have to slide down between the curb and the bus.

One of the four people who were waiting for the bus corroborated the testimony of the bus driver, particularly as to the opening of the bus door, and in other material matters. This witness testified that appellant was standing with him about 18 inches east of the post and did not take a step, but fell where she was standing; that when the bus stopped behind the private car and blew the horn, he, the witness, started for the bus, and when he got half the distance to the car parked in the zone, the driver of the bus motioned him to go back, and that as he started back he saw appellant's feet slip from under her and she sat down on the edge of the sidewalk; and that the doors of the bus had not been open at the time the horn blew nor at the time the driver waved him back.

The testimony, in the aspect most favorable to appellant, with the reasonable inferences to be drawn therefrom, without considering any contradictory or conflicting evidence, shows that appellant had paid her fare from her home to her destination in Moline, and had ridden the first part of the trip, to the intersection of 16th street and 2nd avenue, and that she had a transfer for the remainder of the journey; that if the bus for which she was waiting had stopped at its usual stopping place, she would have walked straight west only a very short distance in order to get aboard; that it approached from the south, stopped outside the bus stop zone behind another bus, and the driver honked the horn and opened the door; that appellant started walking southerly and carefully along the ice covered slippery sidewalk to board the bus where it stood; that in so doing she was traveling a much longer route than she would have done if the bus had stopped at its usual stopping place; and that after taking several steps, she slipped and fell on the icy sidewalk and was

severely injured. When the bus stopped and the driver honked the horn, the witness whom the driver waved back also started for the bus to board it. Appellant claims that the testimony of these two witnesses shows that they considered the acts of the driver of the bus as an invitation to board it at the place where it stopped, and we think that it may be reasonably inferred from the testimony that they did consider the acts of the bus driver as such an invitation.

From the time when appellant started walking toward the bus under the conditions shown, with the intention of boarding it, as a part of her continuous journey, with her fare paid, and possessed of a transfer, she was a passenger of appellee. If she was injured through the negligence of the carrier while making such transfer the carrier is liable. (*Feldman v. Chicago Rys. Co.,* 289 Ill. 25, 32.) A carrier of passengers, although not an insurer of the absolute safety of a passenger, must use the highest degree of care, skill and diligence for the safety of the passenger that is consistent with the character and mode of conveyance employed and the practical operation of the business, and is responsible for the slightest negligence resulting in injury to the passenger, provided the passenger is at the time of the injury in the exercise of ordinary care and caution for his own safety. (*Chicago City R. Co. v. Shreve,* 226 Ill. 530, 538, 539; *Chicago & A. R. Co. v. Byrum,* 153 Ill. 131, 134; *Chicago City R. Co. v. Shaw,* 220 Ill. 532, 539.)

*Davis v. South Side Elevated R. Co.,* 292 Ill. 378, 383, relied upon by appellee, is a case where a passenger having left the train, had passed through the station and slipped on a banana peel on the stairway leading to the street and fell. The court held in that case that it is the duty of a carrier to provide reasonably safe depots, platforms, and approaches for the use of passengers, but that only ordinary care is necessary in such cases.

On the same page of the opinion, referring to and distinguishing former cases, the court said that in all of them "it is clear that the accidents happened in boarding or alighting from trains or in the course of their moving, and the reason for the highest degree of care in those cases was fully as great as if the passenger were on the moving train, but it is clear, by the great weight of authority,—by the textwriters and decisions in other jurisdictions,—that the same degree of care is not required as to the stations and approaches to and from them, because the danger incurred in such surroundings is not the same as it is on moving trains." That case is not authority in this case for the rule invoked by appellee. It relates solely to the duty of the carrier to keep the station, the stairway therefrom, and other similar appurtenances owned or controlled by the carrier, in a reasonably safe condition. No question arises in this case as to the duty of appellee to keep the sidewalk in a safe condition. Appellant was in the act of attempting to board the bus, and we think the rule in the cases distinguished by the court in the *Davis* case applies here. However, if, under the holding in that case, appellee was bound to use only ordinary care under the circumstances in evidence, the question of whether the driver of the bus was using such ordinary care in honking the horn and opening the door when the bus stopped, outside the loading zone, was a question of fact for the jury.

Cases cited by appellee, where the conductor, or the motorman of a street car, did not see, and had no knowledge of a passenger attempting to alight at a dangerous place when the car stopped at a place different from the regular stop, are not persuasive here as supporting the contention of appellee. In one of such cases, *Chicago West Division R. Co. v. Mills,* 91 Ill. 39, the court said: "And therefore unless it should appear that the driver stopped the car for the purpose of letting passengers get off, or he knew that persons were actually getting

off, the company is not chargeable with negligence because of his starting the car forward.'' From this the principle is deductible that the knowledge of the driver of the movements of a passenger is a factor in the question of his negligence. If, in the case at bar, as testified by the driver of the bus, he saw and observed the movements of the ''Garage'' bus a block away, we think the question of whether he saw or could have seen and observed appellant's movements when he stopped the bus, honked the horn and opened the door, and whether he was guilty of a want of reasonable care in doing so, was another question of fact for the jury.

In *Scanlon v. Philadelphia Rapid Transit Co.,* 208 Pa. 195, 57 Atl. 521, relied upon by appellee, a passenger alighting at an irregular stop was injured by miscalculating the slope of the ground. Although holding that the defendant was not liable for her injuries because she could see the conditions, the court further said in the opinion; ''Had she been misled or misdirected by the conductor in any way . . . the case would have been stronger.'' Whether appellant was misled by the driver of the bus in the case at bar is the principal issue, and we think it was a question of fact for the jury to decide.

In *Feeney v. Chicago City R. Co.,* 220 Ill. App. 400, where a passenger alighting at an irregular stop was injured because it was farther to the ground than she thought, and in *Burge v. St. Louis, S. & P. R. Co.,* 193 Ill. App. 492, and *Murtha v. City of Philadelphia,* 130 Pa. Super. 411, 197 Atl. 513, all cited and relied upon by appellee, there was no question of whether the plaintiff was misled by any act of the railway company's servant, and none of them are applicable here.

It is obvious that the hazard of traveling on an ice-covered slippery sidewalk increases in proportion to the distance traveled thereon. Under the evidence, there was a question whether appellant took the increased hazard by a negligent invitation of appellee. It cannot be

said that walking on an ice-covered slippery sidewalk, with knowledge of the condition, constitutes contributory negligence as a matter of law. The courts of this State have long been committed to the doctrine that although a person goes upon a sidewalk knowing it to be defective or out of repair, that fact alone does not establish negligence *per se* on his part, if ordinary and reasonable care is used but the plaintiff's knowledge of the condition is one of the circumstances to be considered by the jury in determining whether the plaintiff was in the exercise of due care; and whether due care was exercised in using a sidewalk, knowing it to be defective or out of repair is a question of fact for the jury. (*Wallace v. City of Farmington,* 231 Ill. 232, 235; *City of Mattoon v. Faller,* 217 Ill. 273, 281; *City of Streator v. Chrisman,* 182 Ill. 215, 217; *Village of Clayton v. Brooks,* 150 Ill. 97, 105; *City of Flora v. Naney,* 136 Ill. 45, 47.) The same principle applies to traveling a sidewalk which is dangerous because of being covered by snow and ice.

As contended by appellee, the familiar rule is that whether there is any evidence that the negligence charged was the proximate cause of the injury, is a question of law. (*McClure v. Hoopeston Gas & Electric Co.,* 303 Ill. 89), and it is urged that the slippery condition of the sidewalk, and not the acts of appellee, produced the injury, and that the acts of the bus driver did nothing more than furnish the occasion for the causal agency (the ice) to act; that such an occasion would be equally afforded if appellee had acted in full compliance with the city ordinance; and that the minds of all reasonable persons would agree that the injury to appellant was caused by other agencies than the act of appellee. The law is well settled that if the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the

condition is not the proximate cause of the injury where the subsequent act is an intervening efficient cause which breaks the causal connection between the original wrong and the injury, and itself becomes the proximate cause. The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for the causal agencies to act. (*Merlo v. Public Service Co. of Northern Illinois,* 381 Ill. 300.) To the same effect is *Illinois Cent. R. Co. v. Oswald,* 338 Ill. 270, 274, upon which appellee relies. Applying the doctrine here, the slippery condition of the sidewalk existed before appellee's bus drove up, and the stopping thereof, the honking of the horn, and opening the door were the subsequent independent acts, and therefore the doctrine invoked does not support the contention of appellee.

In each of the cases of *Fox v. Minneapolis St. R. Co.,* 190 Minn. 343, 251 N. W. 916; *Chesley v. Waterloo, C. F. & N. R. Co.,* 188 Iowa 1004, 176 N. W. 961; and *Downs v. Northern States Power Co.,* 200 Wis. 401, 228 N. W. 471, also relied upon by appellee, a passenger alighting at an irregular stop was injured by a passing motor vehicle. It is clear that in those cases that the proximate cause of the accident was the passing motor vehicle, and the stopping of the car on which the plaintiff was riding merely furnished the condition by which the accident was made possible. The holdings in those cases are not applicable here.

As was said in the *Merlo* case (381 Ill. at page 317); "There may be more than one proximate cause of an injury. But if two wholly independent acts, by independent parties, neither bearing to the other any relation or control, cause an injury by one creating the occasion or condition upon which the other operates, the act or omission which places the dangerous agency in operation is the efficient intervening cause that breaks the causal connection and makes the other act

or omission the remote and not the proximate cause of the injury. . . . What constitutes the proximate cause of an injury in a particular case is ordinarily a question of fact to be determined from all the attending circumstances, and it can only be a question of law when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them.''

The principle that what is the proximate cause of an injury is ordinarily a question of fact for the jury has often been announced. (*Molloy v. Chicago Rapid Transit Co.*, 335 Ill. 164, 168; *Phillabaum v. Lake Erie & W. R. Co.*, 315 Ill. 131, 135; *Pollard v. Broadway Cent. Hotel Corp.*, 353 Ill. 312, 319.) The verdict of the jury in this case does not indicate that all reasonable men would agree that the acts of appellee were not the proximate cause of the injury.

Some of the material testimony was in direct conflict. We are of the opinion that whether the acts of the bus driver amounted to an invitation to board the bus where it stopped, whether such acts were negligent and induced appellant to take an increased hazard, whether the bus door was opened, whether appellant was walking or standing when she fell, whether she was guilty of contributory negligence, and whether the acts of appellee, or the slippery condition of the sidewalk, was the proximate cause of the injury, were questions of fact for the jury. The trial court was in error in granting the motion for a directed verdict and in entering judgment notwithstanding the verdict.

Appellee's contention that there is a variance between the complaint and the testimony, in that the complaint avers that she was injured while attempting to board the bus, while the testimony shows she was not in the act of getting aboard, is considered as waived by its failure to raise the question in the court

below. (*Linquist v. Hodges,* 248 Ill. 491, 497; *Reavely v. Harris,* 239 Ill. 526, 530; *Illinois Life Ass'n v. Wells,* 200 Ill. 445, 453.)

The judgment of the trial court is reversed and the cause is remanded.

*Reversed and remanded.*