DROHAN et al. v. STANDARD OIL CO.

STANDARD OIL CO. v. KEESHIN MOTOR EXP. CO., Inc. et al.

NICHOLS v. KEESHIN MOTOR EXP. CO., Inc. et al.

No. 9365.

Circuit Court of Appeals, Seventh Circuit.
June 8, 1948.

Rehearing Denied July 26, 1948.

762

Richard P. Tinkham and John F. Beckman, Jr., both of Hammond, Ind., and Walter C. Williams, of Michigan City, Ind., for appellant.

Charles A. Boyle, of Chicago, Ill., and Harold Hector, A. H. Highland, Edwin H. Friedrich and Bernard A. Petrie, all of Hammond, Ind., (Crumpacker & Friedrich, of Hammond, Ind., and Boyle, Morrissey & Wagner, of Chicago, Ill., of counsel), for appellees.

Before SPARKS and KERNER, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

Plaintiffs brought this action against Standard Oil Company to recover damages sustained as the result of alleged negligence of defendant's driver in operating a motor truck which collided with plaintiff's tractor-trailer. Defendant, in its answer, denied it had been negligent and alleged that plaintiffs' damages were caused by the negligence of their servant in the operation of the tractor-trailer. Standard also filed a cross-claim against plaintiffs in which it joined C. A. Conklin Truck Line, Inc., and in which it sought to recover damages for loss of its truck and cargo. In its cross-claim it alleged that the collision was caused by the negligent operation of a truck owned and controlled by Conklin, and by the negligent operation of plaintiffs' tractor-trailer. Martha Nichols, administratrix of the estate of Ferris Nichols, deceased (the driver of Standard's truck), was permitted to intervene and file her cross-claim against plaintiffs and Conklin. She sought to recover damages for the death of her husband, which she alleged was caused by the negligence of Conklin and plaintiffs' servant. Upon these issues, the trial judge submitted the case to the jury for a general verdict. The jury rendered a verdict for plaintiffs and against Standard, and verdicts for plaintiffs and Conklin on the cross-claims of Standard and the administratrix, upon which verdicts judgments were entered. These judgments, Standard and Martha Nichols seek to reverse.

The negligence charged was that defendant drove its truck at a speed greater than was reasonable and proper and that defendant negligently maintained and controlled its motor vehicle.

The collision occurred on a paved highway running in an easterly and westerly direction. The highway was divided into four lanes separated by black lines. The two most northerly lanes are reserved for west-bound traffic, and the two southerly lanes for the east-bound traffic. That part of the highway where the collision occurred is in open country. Shortly prior to 6:00 a. m. on February 22, 1945, Conklin's truck, traveling east, caught fire. He stopped and parked on the outer east-bound lane of the highway, and placed flares or pot torches from 40 to 75 feet to the rear, some along the side, and others in front of the truck. The Conklin driver then disengaged his tractor and drove off to secure help. During his absence, other trucks approached from the east. The drivers stopped on the north side of the highway, and attempted to put out the fire. At this time the fire was visible for about a mile to persons approaching the scene from the east. At about 6:15 a. m. the Michigan City fire department arrived and proceeded to exinguish the fire and while so engaged, the Keeshin tractor-trailer—10 to 12 feet in height, 20 feet long and 7 feet wide, loaded with 15,000 to 20,000 pounds of cargo, fully lighted and equipped in the rear with a bar of three red lights across the top, one red light on each corner, tail lights above the axles, and two reflectors hanging from the body which could be seen from a distance of 800 feet to the rear—slowly approached from the west and came to a stop in the outer east-bound

lane. By this time the Conklin truck had been moved forward and practically off of the paved portion of the highway. Within a minute or less after plaintiffs' tractor-trailer arrived, defendant's truck (an oil tanker), loaded with 5,000 gallons of gasoline and operated by Ferris Nichols, approached from the west. It was traveling in the outer east-bound lane at a speed of 35 or 40 to 45 miles per hour. Just as the Keeshin tractor-trailer was starting to go, the driver thereof blinked his clearance lights several times, and when he noticed that the driver of defendant's oil tanker was not slowing down, he took the tractor-trailer out of gear and braced himself for the crash. Defendant's truck hit the Keeshin tractor-trailer squarely in the rear and pushed it 70 to 90 feet. The impact smashed defendant's tractor; Nichols was killed; an explosion occurred; and both outfits and their cargoes were destroyed in the fire that followed.

■ In its brief, in arguing for a reversal, defendant contended that the verdicts were not sustained by the evidence. Upon oral argument, however, counsel for defendant stated that he was not asking this court to reverse on the ground that the trial court had overruled his motion for a directed verdict. We take this to mean that defendant conceded that the evidence was such as to present to the jury a question of fact, i.e., whether defendant was guilty of negligence as charged in the complaint. We shall therefore proceed to consider the remaining claimed errors, the most important of which concern the instructions.

The court, after instructing the jury that an operator of an automobile was required to keep a reasonable lookout for other vehicles and use that degree of care which a reasonable and prudent person would exercise to avoid an accident, told the jury that Nichols was charged with the duty "to regularly and continuously observe the highway ahead of him so as to discover any vehicle or other conveyance on the highway."

The argument is that all that is required of one who operates a motor vehicle upon a public highway is the exercise of ordinary and reasonable care, and that by this instruction the court imposed upon defendant and Nichols a duty greater than the duty of reasonable care, and Martin v. Lilly, 188 Ind. 139, 121 N.E. 443, and Northwestern Transit v. Wagner, 223 Ind. 447, 61 N.E.2d 591, are cited.

Concerning the Wagner case, supra, it will be enough to say that that case did not involve any question of instructions and hence is not applicable. It is true, however, that in the Lilly case, supra, the court condemned an instruction which told the jury that it was the duty of the driver of an automobile, while driving the same upon a public highway, to be constantly on the lookout for vehicles that might at the time be making use of the highway. But since that case, Indiana has provided that "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing." § 47-2004, Burns' Ind.Stat.Ann. For that reason we think that case is distinguishable on the facts and hence is not controlling here. We find support for this conclusion by what was said in the case of Pfisterer v. Key, 218 Ind. 521, 33 N.E.2d 330, 335.

■ In the Pfisterer case, supra, the driver struck a pedestrian. The statute involved was § 47-513, Burns' Ind.Stat.Ann. By the provisions of that statute it was the duty of a driver of a vehicle on a highway to slow down and give warning upon approaching pedestrians. There was a verdict and judgment for plaintiff. Upon appeal appellant complained of an instruction which told the jury that the driver was bound "to constantly observe the highway in front of him so as to discover other vehicles or pedestrians thereon." The court said that by the use of the words "constantly observe" the jury was told that appellant must keep his eyes constantly on the roadway while he was driving, and that the phrase "constantly observe the highway" meant to continually or regularly pay attention to the highway, and held that there was no reversible error in the giving of the instruction. It is clear that the language used in the in-

struction in our case is the equivalent of the language used in the Pfisterer case, supra, and since by the provisions of § 47-2004 it was the duty of a driver, having regard to the actual and potential hazards, not to drive his vehicle at a speed greater than was reasonable and prudent, it cannot be said, under the circumstances here appearing, that the court committed reversible error.

█ The point is next made that when the court told the jury that the driver of the oil tanker was charged with the duty to so restrict the speed of his vehicle as to avoid colliding with any conveyance on the highway, it imposed an extra-legal obstacle in the path of Nichols and defendant, and in effect directed a verdict against them. To be sure, had the court made such a charge, without more, the instruction would have been erroneous, Schlarb v. Henderson, 211 Ind. 1, 4 N.E.2d 205, and Opple v. Ray, 208 Ind. 450, 195 N.E. 81, because the question of negligence, with respect to the speed and the visibility of objects on the road ahead, is a question for the jury, and must be determined from the facts and circumstances of each case. But the instruction in question provided that the speed of every vehicle should be so restricted, "in compliance with legal requirements and with the duty of all persons to use due care," and concluded that "if you find that the facts and circumstances were such that he should have so restricted his speed in such compliance, then such failure would be negligence as a matter of law." Thus it is clear that the instruction as given left the question of fact for the jury. We see no error in the instruction.

The next point urged is that the court erred in instructing the jury on prior or remote causes. The instruction was given at the request of Conklin. The complaint is that the instruction omitted the principal allegation of negligence against Conklin, i.e., that Conklin failed to place proper warning signals on the highway, and that the conduct of Conklin was therefore the legal cause of the collision. The record discloses that flares were placed on the road and that they remained there up to the time that Nichols crashed into plaintiffs' tractor-trailer.

We observe that before the trial judge read to the jury the instruction now being considered, he instructed them as to the issues and the contentions of all the parties. We note, too, that in the questioned instruction he charged the jury that if they should find from all of the evidence that the acts of Conklin in stopping on the highway was a prior or remote cause of the accident, and if they further found from all the evidence that there intervened a distinct, unrelated cause that proximately produced the injury, then, in that event, the verdict should be for Conklin.

█ Since the law is (Van Hoorebecke v. Iowa Illinois Gas & Electric Co., 324 Ill.App. 88, 57 N.E.2d 652) that if the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury when the subsequent act is an intervening efficient cause which breaks the causal connection between the original wrong and the injury, and itself becomes the proximate cause, we cannot, in view of the state of this record, hold that error was committed by the giving of that instruction.

We now consider the contention that the court erred in refusing to charge the jury as requested by Nichols and defendant. By one of the tendered instructions, defendant endeavored to have the court tell the jury that the Keeshin driver was guilty of negligence if he turned into the inner lane of the highway without first ascertaining that any traffic was approaching from the rear. The other requested instruction dealt with the statute requiring flares to be placed on highways.

█ All that need be said is, that we have read the refused instructions as well as the instructions given by the court covering these questions. The given instruction properly and fully announced the correct propositions of law applicable to the case; hence no error was committed in refusing to give the tendered instruc-

tions. Rea Riggin & Sons v. Scott, 114 Ind.App. 4, 50 N.E.2d 664, and Frick v. Bickel, 115 Ind.App. 114, 54 N.E.2d 436.

The next proposition urged is that the court improperly admitted in evidence photographs of the vehicles involved in the collision. The argument is that these photographs did not tend to prove or disprove any issue in the case, and merely served to prejudice the jury on the speed of defendant's oil tanker.

The admission or rejection of photographs in evidence is a question that lies within the discretion of the trial court, and its discretion will not be disturbed unless an abuse of such discretion is shown, Haven v. Snyder, 93 Ind.App. 54, 176 N.E. 149.

We have already noted that the Keeshin tractor-trailer was loaded with 15,000 to 20,000 pounds of cargo, and that when the oil tanker crashed into it, the impact hurled the tractor-trailer 70 to 90 feet. The photographs showed that the tractor of defendant's oil tanker was smashed. These facts, had, in our opinion, some probative weight not only in identifying the type and size of the equipment involved, but were some proof as to the speed at which Nichols approached the place of collision. In such a situation, we do not believe it can be said that the court abused its discretion; rather, we think the judge was acting clearly within the limits of his discretion.

Finally, the point is made that the court erred in including in the amount of damages the claim of Ditto, Inc., an owner and consignor of a portion of the cargo destroyed.

The record discloses that plaintiffs in their complaint had listed certain consignments of cargo which was destroyed in the collision and fire. During the progress of the trial, the parties stipulated that the trial judge would instruct the jury that plaintiffs' damages amounted to $12,195.60 and that if the jury found for plaintiffs, that would be the amount of the verdict. "If, afterwards, proofs of loss and cancelled checks come in showing the damages are less, the verdict and judgment will be mod-ified accordingly by agreement of the parties." The verdict of the jury was for $12,195.60.

It also appears that after the bringing in of the verdict and while the cause was being argued on the motion to set aside the verdict, defendant objected to the amount of the Ditto claim of $1,024.15 on the ground that the Ditto claim had not been listed in the complaint. Thereupon plaintiffs moved to amend the complaint to include the Ditto claim, and the defendant's objection to the amount of the Ditto claim was overruled. Upon this record, we see no reason to hold that the court erred in including the amount of the Ditto claim.

Affirmed.