## GREENE v. CENTRAL OF GEORGIA RAILWAY COMPANY.

ATKINSON, J. The evidence in this case was sufficient to authorize a finding that the fire which injured the plaintiff's property was communicated from the defendant's engine; and it was erroneous for the court to grant a nonsuit. See *Port Royal Ry. Co.* v. *Griffin,* 86 *Ga.* 172 (12 S. E. 303); *Central Ry. Co.* v. *Trammell,* 114 *Ga.* 312 (40 S. E. 259); *Southern Ry. Co.* v. *Herrington,* 128 *Ga.* 438 (57 S. E. 694).

*Judgment reversed. All the Justices concur.*

Argued January 13,—Decided March 26, 1908.

Action for damages. Before Judge Felton. Houston superior court. April term, 1907.

The action was for damages on account of a fire which injured certain pecan trees of the plaintiff near the railroad track of the defendant, it being alleged that the fire was communicated from a passing engine. The plaintiff testified, in part: "When I got there the thing was burning on the far side of my grove from the railroad track, and had spread all over it, and the stubble was all burning along the embankment and right of way; it was still smoking and some of it burning, but mostly smoking; it had nearly all been burned over. It was charred and blackened by reason of its having been consumed by the blaze. The leaves were all burned and the orchard was in a very withered condition. The leaves were all burned and the bodies of the trees were all blackened and

charred. This was the 13th of September, and the leaves had possibly a month to go until frost. They were in a vigorous state of greenness before the fire, but they were entirely blasted and burned by it. . . The wind was blowing across the railroad track running out of Fort Valley towards Marshallville, right over my orchard here [indicating]. It was blowing right across the railroad, over my pecan orchard, in something of an east to west direction. I noticed the condition of the right of way before the fire. It had broomsedge, about that high [indicating about as high as a man's waist], and every kind of inflammable stuff all along the embankment of the railroad. There were some there from the growth of the year before. The railroad ran upon an embankment at that point. It was not very high. My grove adjoins the right of way. I could not say just how far from the railroad track; I presume about 70 feet. The right of way is about 70 to 75 feet from the center of the road. . . I had cut the hay from that grove about a week or two before the fire. I can not say that the leaves on the trees had begun to turn, from the effects of the fall, on the 13th day of September. The stubble there was broomsedge on the right of way, and it was brown. There was some of my cut hay on the ground. It rained a day and half after I cut the grass; and there was some I had failed to bring up in rows, and that on the ground was destroyed by the fire. . . I suppose it is some 60 or 70 feet from my nearest pecan tree to an occupied house. That house is in a somewhat northerly direction from the grove, and the wind was blowing from the grove towards the house, kind of quartering." Fannie Hill testified, in part, as follows: "I first saw the fire up side of the railroad. It was on the right hand side of the railroad, going towards the crate factory. It was close up to the railroad, not far from it. It made a large fire. It went right over that pecan orchard and come over towards my house. I had seen a train going along the railroad. It was a long freight train. It wasn't long before the fire. The train hadn't got out of sight before the fire started, but I can't say the train did it. It was going from Fort Valley, out towards Albany. It was smoking when it went along there. I was about as far as from here to that tree [indicating a tree about 80 feet away] from the fire. I was on the same side of the railroad. My house was the closest house to the pecan grove that was there. I saw what it was that caught

fire close to the railroad. It was straw, green straw. It was not so green; it was not so dry; it was betwixt and between. It was closer to my house than it was to the factory that the fire started. It started closer to the railroad than it did to my house. It was lots closer to the railroad than it was to my house. I had been at home all that morning. . . I don't know how long the fire had been burning when I saw it, but I saw the smoke just as it kindled up. I don't know how long it had been there. I saw the smoke as it was coming up. It hadn't blazed up when I first saw it. I saw the smoke before I saw the fire or light. I can not say what it was that caused it to blaze. I do not know how long it had been there. People frequently walk along the track on the railroad,— every day. I don't know whether somebody threw a cigar there, or the engine threw a spark, or somebody dropped a spark out of their pipe, or what. I never saw anybody go along there after I saw the train go by before I saw the fire. I was washing in the back yard. That was in plain view of the place I saw the fire. I don't remember seeing any one going along the railroad track. I never saw any fire there before the train passed. No, of course, I never saw any fire until it blazed up. I don't know whether anybody passed just before or after the train, or not. I saw the train go by. I did not see it emit any sparks. I did not see any live coals coming out. It was making a powerful smoke, but I never saw any sparks."

H. A. Mathews and C. L. Shepard, for plaintiff.

Wimberly & Jordan, for defendant.