## 1310.  SMITH v. ATLANTIC COAST LINE RAILROAD CO.

1. The presumption of negligence does not arise against a railway com-
pany for damages done to person or property, until it appears that the
proximate cause of the injury was occasioned through the operation
of its "locomotives, cars, or other machinery," or by the act or mis-
feasance of some person in its employment and service.
2. Independently of the presumption of negligence, the plaintiff in the
present action made sufficient proof of his case to require a submis-
sion of it to the jury; and it was erroneous for the court to grant a.
nonsuit.

Action for damages, from city court of Waycross—Judge
Myers.  June 10, 1908.

Argued October 29,—Decided November 24, 1908.

On November 21, 1905, the plaintiff, while standing in front of
the defendant's passenger station at Waycross, was severely in-
jured by the explosion of two railway torpedoes run over by a pass-
ing locomotive.  He was intending to take a train for Jacksonville,.
Florida, which, according to the published schedule, left Waycross:
at 6:20 a. m., but which he thought left at 6 o'clock.  He had spent.
the night sitting up with a sick friend near the station.  At about:
4:30 o'clock he left the friend's house and walked across to the
ticket office, and, finding that closed, he went into the restaurant
connected with the station, ate a sandwich, and drank a cup of
coffee, this taking about fifteen minutes.  He went out to the front
of the building, upon a gravel walkway, over which passengers.
walked from the waiting-room to the ticket office, restaurant, etc..
He had started to the white waiting-room, but stopped on the walk-
way and engaged in conversation with another gentleman.  While.
they were thus standing, talking, in front of the waiting-room,.
about seven or eight feet from the tracks, an engine passed and
exploded two torpedoes immediately in front of them.  The ex-
plosion made considerable noise, and a piece of the metal covering
in which the explosive substance was contained struck the plain-
tiff, one piece piercing his eye, another making a wound upon his.
stomach, and still another going into his leg.  The torpedoes were
made of dynamite or other explosive substance, contained in a.
metal covering, about one and one-half inches wide and about two
inches long, with tin projections on either side, so that the tor-
pedoes could be fastened to the top of the rail by clamping the tin

projections under the sides of the rail.   They were used as danger signals in train service.   Under railway rules two torpedoes indicate one thing, while one torpedo indicates another, in stopping and flagging trains.   Torpedoes were furnished to engineers and firemen at supply stations located at different points; and one of these supply stations was at Waycross.   It was against the rules of the company to put them out in the yards around stations, though they were occasionally exploded there.   Its yards at Waycross are extensive, and contain a large number of tracks around and adjacent to its passenger station.   It has lines of railroads coming into this station from five different directions,—from Savannah, Brunswick, Jacksonville, Montgomery, and Albany,— and it also handles trains from a branch of the Atlanta, Birmingham and Atlantic Railroad, through the same yards.   The restaurant and usually the waiting-rooms are kept open all night.   The defendant's yard-master, who testified as a witness for the plaintiff, stated, that he was on duty that night, handling trains in the yards; that there was no necessity for putting down torpedoes in the yards, as other means of signaling were arranged for there; that if one of the employees had desired to put torpedoes down, it might have been done without asking him, but that he did not know of any being placed in the yard by any of the employees that night; that, so far as he knew, torpedoes might be obtained by other than railway companies, by purchase or otherwise; that sometimes, in transporting torpedoes from the supply rooms to the trains, employees carried them in their pockets, and they might be dropped occasionally, though he did not know of any being lost thus; that it would be improbable that a locomotive could explode torpedoes, unless they were on top of the rail; the flange of the engine wheel would hardly explode one lying on the ground near the rail. These facts appearing in the testimony, the court granted a nonsuit, on motion of the defendant.

*Wilson, Bennett & Lambdin, Crawley & Crawley,* for plaintiff.
*Bennet & Conyers, S. W. Hitch,* contra.

POWELL, J.   (After stating the foregoing facts.)

1.   Much of the discussion of the case by counsel has been upon the point as to whether the presumption of negligence attached to the defendant upon proof that the plaintiff was injured by the explosion of a torpedo run over by the engine.   Our Civil Code,

§2321, provides for a presumption of negligence against railway companies where the damage is done "by the running of the locomotives or cars or other machinery, or . . by any person in the employment and service of such companies." The presumption relates only to the particular acts of negligence set out in the petition. In this case the proximate cause of the injury is not alleged to have been any negligence in the operation of the locomotives. The word "running," as used in this code section, does not refer so much to actual motion as it does to the general operation of the things named in the statute. *Ga. Ry. & Elec. Co.* v. *Reeves,* 123 *Ga.* 705 (51 S. E. 610); *S., F. & W. Ry. Co.* v. *Slater,* 92 *Ga.* 391 (17 S. E. 750). See *Hubbard* v. *Macon Ry. Co.,* post, 223 (62 S. E. 1018). The negligent presence of the explosives in the front of the passenger station, where the presence of persons might be expected, is the gist of the present action. If the torpedoes were placed there by outsiders, it was not a case for the operation of the statutory presumption; if they were placed or dropped there by employees, it was such a case. The burden of proving that they were placed there by an employee was therefore upon the plaintiff; and we suppose that the trial judge granted the nonsuit on the theory that the plaintiff had not shown that they were placed or dropped there by an employee of the defendant company.

2. Under all the circumstances shown, we think that the plaintiff proved enough to make a prima facie case, such a case as to raise an issue for submission to the jury. The torpedoes were there as a result of an act, deliberate or negligent, either of the company's employees or of some outsider. They were upon premises controlled by the defendant; this is of some evidentiary value, though slight. These torpedoes were a special contrivance designed for and used peculiarly in railway service; outsiders had no business with them; and especially had no right to place them on the company's tracks. An outsider, however, might have bought, found, or stolen them, and might have put them on the track. Let us examine the time, place, and other circumstances to see if this is reasonable. The time was four o'clock, before dawn, on a winter morning; the place was in the yards of the defendant, where its employees were on duty making up and shifting trains of cars, and was in front of the passenger station, some of the rooms of which were lighted and open. Say that the object of the outsider

was sport or mischievous prank—is it probable that any one would previously furnish himself with two torpedoes and then go to this open place on the premises of the railway company, in the late hours of a winter night, to hear them explode or to witness the results of their explosion? Such things are not usually done that way. If the outsider's purpose was sinister, he would hardly have chosen so open a location for the place of his offense, and would hardly have used a caution signal as a means of committing it. This theory seems unreasonable. The deliberate act of an outsider seems improbable; an unintentional dropping of two torpedoes in such a manner that both of them should fall on the top of the rail and balance themselves and remain there would be even more unlikely. On the other hand, if the employees, for some purpose in hand, connected with the moving of the trains in the yard, had found it more convenient to use torpedoes for a signal, instead of the ordinary means of signaling, the very fact that there was a rule against using them in the yards would be a reason why they would choose to use them there only in the dark hours of the morning, when the violation of the rule would be least likely of detection. The presence of a single torpedo would not make so strong a case against the employees as does the fact that there were two of them. In the first place, one would serve any probable purpose of an outsider as well as two; on the other hand, the arrangement of two torpedoes is a regular train signal, such as an employee would give and an engineer would recognize.

While a plaintiff who relies upon circumstantial evidence for the establishment of the case must raise more than a mere suspicion, and must reasonably establish the theory relied upon; yet in the present case there was more than "a mere scintilla of inconclusive circumstances"—there was "scope for legitimate reasoning by the jury." *Georgia Ry. & El. Co.* v. *Harris,* 1 *Ga. App.* 714 (57 S. E. 1076). "In arriving at a verdict, the jury, from facts proven, and sometimes from the absence of counter-evidence, may infer the existence of other facts, reasonably and logically consequent on those proved." Civil Code, §5157. By comparing the present circumstances with those relied on by the plaintiffs in many of the suits in this State in which recoveries have been sustained for fires alleged to have been set out by locomotives (e. g. *Green* v. *Central Ry. Co.,* 130 *Ga.* 375 (60 S. E. 861), and cit.), it will be seen that

we are making no exception to any general rule, in holding that nonsuit was improper. "A nonsuit is not granted merely because the court would not allow a verdict for the plaintiff to stand." It is only when, admitting all the facts proved and all reasonable deductions therefrom, the plaintiff has not made out a prima facie case that this is the legal result of a trial. Civil Code, § 5347.

As the case is to go to trial again, we may add that, under the facts appearing in the proof, the degree of diligence owing by the defendant to the plaintiff was ordinary and not extraordinary care. Cf. *Southern Ry. Co.* v. *Rosenheim,* 1 *Ga. App.* 768-9 (58 S. E. 81). *Judgment reversed.*