(No. 14293.—Judgment affirmed.)
Mina McClure, Defendant in Error, *vs.* The Hoopeston
Gas and Electric Company, Plaintiff in Error.

*Opinion filed April 19, 1922.*

1. Negligence—*what are the essential elements in action for negligence.* The essential elements of a cause of action for negligence are: (1) The existence of a duty on the part of the person charged to protect the complaining party from the injury received; (2) a failure to perform that duty; and (3) an injury resulting from such failure.

2. Same—*when gas company is liable for injury caused by ignition of escaping gas.* The failure of a gas company to repair a leak in a gas pipe after reasonable notice will render the company liable if an injury occurs because of a fire which is the direct result of the escaping gas, as it is the duty of the company to make repairs immediately if there is likelihood of injury.

3. Same—*direct evidence as to how gas became ignited is not necessary.* Direct evidence as to the cause of the ignition of escaping gas is not essential in order to hold a gas company responsible for an explosion and resulting fire, provided the circumstances proven are sufficient to enable the jury to base their verdict upon legitimate inferences drawn therefrom and not upon speculation.

4. Same—*question whether fire was caused by escaping gas is for the jury—res ipsa loquitur.* In an action against a gas company for damages caused by a fire alleged to be the result of escaping gas, whether a *prima facie* case is made by proof of escaping gas and a failure to repair the leak immediately, and whether the doctrine of *res ipsa loquitur* applies, are questions of fact for the jury.

5. Same—*when negligence is the proximate cause of injury.* The negligence of the defendant is the proximate cause of an injury if it can be properly said to have produced the result complained of in natural and continuous sequence, unbroken by any efficient intervening cause.

6. Same—*whether negligence is the proximate cause is for the jury.* Whether there is any evidence that the negligence charged was the proximate cause of the injury is a question of law, but if there is any such evidence it is a question for the jury whether the negligence charged was, in fact, the proximate cause.

7. Same—*when question as to origin of fire is properly submitted to jury.* In an action against a gas company to recover dam-

ages caused by a fire alleged to be the result of the igniting of escaping gas the burden is on the plaintiff to establish the negligence of the defendant, but if there is either direct or circumstantial evidence of negligence by proof of escaping gas and failure to repair the leak after notice, the question as to the origin of the fire is properly submitted to the jury.

8. Same—*when Supreme Court cannot consider weight of the evidence.* In an action for negligence, where the finding of the jury has been approved by the trial and Appellate Courts, the question whether the weight or preponderance of the evidence is against the verdict cannot be considered by the Supreme Court.

Writ of Error to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. Walter Brewer, Judge, presiding.

Vause & Kiger, (Lindley, Penwell & Lindley, of counsel,) for plaintiff in error.

Gunn & Platt, (Walter T. Gunn, of counsel,) for defendant in error.

Mr. Justice Carter delivered the opinion of the court:

Defendant in error recovered a judgment in the circuit court of Vermilion county against plaintiff in error for $3200 in an action on the case for damages from a fire alleged to have been caused by the ignition of gas escaping from a defective pipe carrying illuminating gas furnished by plaintiff in error to the apartment building owned by defendant in error. After a trial by the court and jury a judgment was entered on the verdict for $3200, and the case was taken by plaintiff in error to the Appellate Court, where the judgment was affirmed. It has been brought here by petition for *certiorari.*

The plaintiff in error is a corporation engaged in the business of furnishing gas and electricity for commercial purposes to the residents of the city of Hoopeston. Gas is

conducted through pipes to the various residences, including the apartment building of defendant in error. The testimony shows that the apartment building in question was three stories high and that there were four four-room apartments or flats on each floor; that defendant in error, her husband and daughter occupied the south apartment on the first floor; that a small air-shaft about fourteen inches square ran up through the center of the building and connected with various apartments; that the air-shaft in the apartment occupied by defendant in error ran through a closet opening into the kitchen; that in this closet was located a gas meter connected with a gas stove; that pipes connecting with the gas main in the street ran into each apartment, being connected with the gas meter therein, which was in turn connected with what is called a hot-plate, or a gas stove. Each apartment in the building thus had its own meter and the tenant paid for the gas he consumed on the slot principle,—that is, each meter was provided with a slot wherein a twenty-five cent piece could be dropped, and when twenty-five cents' worth of gas had been consumed the meter automatically shut off further gas until another twenty-five cent piece was dropped in the slot. Once a month an inspector for the gas company collected the money out of each meter. The evidence for plaintiff in error tends to show that when this gas equipment was installed in the building it was made with the agreement that if defendant in error would place a gas-plate or stove in each apartment plaintiff in error would install the necessary pipes, meters and connections without charge, and that no charge was ever made by plaintiff in error for any part of the gas equipment in the building except for the hot-plates and the stoves. The apartment occupied by defendant in error and her family originally had a hot-plate therein, but about a year before the fire a gas stove was substituted. James C. McClure, the husband of defendant in error, testified that after the change was made from the

hot-plates to ranges he noticed at different times a strong odor of gas in his own and other flats in the building; that he had observed leaking gas in the building several times during the year preceding the fire, particularly in April or May; that he had noticed leaking gas in the northeast corner of a flat on the third floor, and there had been intervals that gas had leaked in the building from August, 1918, to the time of the fire, in August, 1919; that often when employees of plaintiff in error came to read the meter he called their attention to escaping gas and asked them to correct it, but they always reported, after searching, that they could not find any leak; that he telephoned the office of plaintiff in error three or four months before the fire and complained of a strong odor of gas and asked to have it repaired; that on the morning of the fire he got up about 5:30 and both he and his wife noticed a strong odor of gas but breakfast was prepared on the gas range, and about six o'clock he discovered that the leak was at a gasket or knuckle that joined the meter on the pipe connecting with the gas range; that he touched a match to the leak and a flame shot out about an inch wide and about five inches long. His wife testified that she also examined the gas pipe and lit the gas escaping therefrom with a match and then blew it out. The husband testified that after he had blown out the flame he began trying to reach the plaintiff in error's office by telephone, which he finally succeeded in doing shortly after seven o'clock, and asked for the manager, Austin, and on being told that Austin was out of the city he talked with Austin's son, who was an employee of plaintiff in error, and explained to him about the leak and asked him to send someone out to fix it right away, and advised him of the extent of the leak by telling him of the flame that was caused when he lighted the escaping gas; that Austin said they could not fix the leak that day as they had started a job in another part of the city which they had to finish but would get to his place the next day.

Defendant in error left the building with her daughter to go to a train about 6:30 in the morning, and it was after she left that her husband succeeded in reaching plaintiff in error over the 'phone. The husband further testified that about eight o'clock, leaving no fire or light in the flat and leaving the windows open but locking the doors, he personally went to plaintiff in error's office to tell again about the leak and ask to have it fixed as soon as possible. He also said that he would like to have a change made in the pipes in the basement. The testimony on the part of the plaintiff in error tended to show that he seemed more anxious to have the pipes changed in the basement than to have the gas leak fixed in his apartment; that he told them that if he had a wrench he could fix the leak himself. The evidence on the part of some of plaintiff in error's employees, as well as one of the tenants in the flat above that of defendant in error, was to the effect that McClure talked over the 'phone with an employee of plaintiff in error about fixing the leak and also about changing the pipes in the basement. McClure testified that one of the employees in the office of plaintiff in error stated that they would send out men at once to fix the leak, and three employees made preparations to go to the apartment building to make the repairs; that after he had been so informed he started back to the building and had proceeded about half the distance when he heard the alarm of fire, and on reaching the building found that the fire was in his own flat. The testimony of the witnesses on behalf of plaintiff in error tends to show that the alarm for the fire was shortly after eight o'clock in the morning. The weight of the evidence found in the record would tend to show that the fire occurred before nine o'clock,—probably between 8:30 and 8:45 in the forenoon. The fire burned up through the air shaft from defendant in error's flat to the third floor, destroying much of the roof and doing considerable damage to the west half of the third floor and the south side of

the first floor, burning most of the personal effects in defendant in error's flat. The gas meter for her flat was on the south side of the partition, towards the side where the fire was. McClure testified that he had been told by plaintiff in error's employees never to move the gas meter nor to do anything with the pipes himself.

The fire department of the city of Hoopeston responded to a call to the fire and put it out. The chief of the department testified that judging by where the fire was the greatest, it started in a lower room close to the air-shaft; that there was a gas stove in the apartment which he was told was occupied by defendant in error; that there was a smell very much like gas around there, but there was too much fire to distinguish any flames that indicated the burning of gas. Mrs. Sherfield, who lived on the second floor just above defendant in error's flat, was attracted on the morning of the fire by a smell of burning wood and saw a light blaze through defendant in error's kitchen. Another tenant, Clarence Matthews, noticed the smell of escaping gas at different times before the fire, and testified he had notified the company when a representative came to collect for the meter but was told they could not locate it; that the escaping gas was worse in the kitchen close to the gas stove. His wife, Lillie Matthews, testified to the same effect. C. E. Wyatt, another tenant in one of the flats in the building, testified that he was in his garden when a lady called his attention to the fire, and he attempted to gain entrance to the McClure flat to turn in an alarm by telephone but found the door locked; that he could see the fire inside and saw that the linoleum was burning; that he heard the fire whistle, and knowing the alarm had been given went to his own apartment to rescue some of his personal property; that he noticed the flames were coming from the center of the building. Othie Bruten, who was standing near the defendant in error's flat shortly after the fire broke out, helped move a cook stove out of the

building, and it appeared from the testimony that this stove, having a fire in it, was in an apartment occupied by the O'Neals. The O'Neals lived on the first floor, and the O'Neal kitchen adjoined the closet in which the gas range of defendant in error's apartment was located and where the gas was found escaping by defendant in error and her husband. The testimony also shows that there was an opening about a foot and a half long and about five inches wide from the O'Neal flat into the air-shaft. The evidence also shows that there was a cook stove in an apartment occupied by another tenant, having a fire in it on the morning of the fire; that the south side of this stove was next to a closet, with an opening into the air-shaft similar to the one in the O'Neal apartment, and that opening was right above the one where the meter in the McClure flat was placed.

There is considerable testimony in the record offered on behalf of plaintiff in error as to the leak in defendant in error's flat being one of minor importance as its employees understood from what had been told them by McClure. The testimony of one of the employees of plaintiff in error who had stated to McClure that he would go to the apartment at once and fix the leak was, that when he got to the apartment and found the fire in progress he went immediately to the closet where the McClure meter was located and shut off the gas in the air-shaft where it came into the building. He also testified that he noticed an odor of either sewer gas or waste water at that time and that the waste water-pipe leaked where the gas pipe was; that he found the cooking utensils in the way near the gas meter and had to kick them aside, and that the fire was not out when he shut off the gas. Another employee of plaintiff in error, Orla Krager, testified that he was in the office when McClure came in to complain about the leak, and he agreed with the other employee that McClure seemed to be more anxious to have the pipes changed in the basement than to

fix the gas leak in the closet. One of the witnesses testified that the main gas pipe came up on the north wall of the closet and that the gas stove of defendant in error was against the south wall; that a space of two and a half feet was between the meter and the stove, the meter being about six inches from the main pipe leading into the building; that when they went in to cut off the gas the lead pipe had melted off during the fire and gas was escaping from that.

A motion was made by counsel for plaintiff in error at the close of defendant in error's testimony, and again at the close of all the evidence, to instruct the jury to find plaintiff in error not guilty, which the court denied.

Counsel for plaintiff in error contend that the essential elements of a cause of action for negligence were not proven; that the doctrine of *res ipsa loquitur* does not apply to the facts in this case, and that there is no evidence in the record tending to show the manner in which the escaping gas became ignited, and that the declaration is defective because it does not state the exact manner in which the gas was ignited. This court has stated, in harmony with the authorities on the question, that "the essential elements of a cause of action for negligence are: (1) The existence of a duty on the part of the person charged to protect the complaining party from the injury received; (2) a failure to perform that duty; and (3) an injury resulting from such failure." (*Devaney* v. *Otis Elevator Co.* 251 Ill. 28.) There is no doubt whatever that the failure of a company to repair a gas leak after reasonable notice will render the company liable if an injury occurs because of a fire which is the direct result of the escaping gas. There is no question, under the evidence here, that there was a gas leak, that it had been reported on the morning of the fire, and that plaintiff in error had a reasonable time, if the notice had been promptly acted on, to repair the leak before the fire. The duty to repair a leak of es-

caping gas is measured by the likelihood of injury, and it was the duty of the gas company in this case to make repairs immediately. (2 Thornton on Law of Oil and Gas,— 3d ed.—sec. 693; *Manning* v. *St. Paul Gas Light Co.* Ann. Cas. 1916E (129 Minn.) 276; *McWilliams* v. *Kentucky Heating Co.* L. R. A. 1916A, 1224.) The authorities have more than once said that "a company dealing with a substance so dangerous as gas must be held to a high degree of care and the exercise of every reasonable precaution in guarding against accidental injury." (*Shirey* v. *Consumers' Gas Co.* 215 Pa. St. 399.) It would seem from these authorities that the gas company and those employees charged with repairing leaks would necessarily be held to know that at the hour in the morning when this leak was reported fires in other stoves were liable to be burning, and that in view of the character of the leak it would be dangerous to allow the escape of gas to continue. One of the repair men testified for plaintiff in error that if he had known the leak was a dangerous one he could have gotten down to defendant in error's house in ten minutes. While it was a disputed question in the case whether the leak was so reported by McClure to the gas company over the 'phone as to show its importance, we think the evidence in the record was of such a character that the jury had a right to believe defendant in error's witnesses and to find that there was not proper care exercised by plaintiff in error to repair the leak.

Counsel for defendant in error concede that there was no positive or direct proof as to how the gas was ignited but that the proof found in the record shows clearly that the gas leak was in the closet; that the closet was near the bottom of an air-shaft about fourteen inches square, which ran up through the building; that this air-shaft connected with three other apartments in which stoves were burning at the time the fire occurred. The proof also shows that the blaze was observed at the top of the roof in the

center of the building where the air-shaft ended, and the evidence tends strongly to show that the fire started in the air-shaft in defendant in error's apartment, and there is evidence that the cooking utensils which were located near the McClure gas meter were scattered about as though there might have been an explosion of gas, although there is evidence on the part of an employee of plaintiff in error that he scattered these utensils with his feet when he went into the closet to turn off the gas. It would seem from the record that the jury were justified in finding that the gas was ignited by coming in contact with fires in adjoining apartments, by means of the air-shaft.

It is urged by counsel for plaintiff in error that the counts of the declaration do not in any way set out how the gas became ignited. The first additional count of the declaration contains the averment that "while the plaintiff was using her said premises with due care and caution for its safety and preservation, said gas from said pipe escaped into a certain other room in said building of the plaintiff and not occupied by the plaintiff and became ignited." The proof shows that there was no fire in defendant in error's apartment at the time the gas became ignited, and that neither defendant in error nor her husband was guilty of any negligence in causing the fire. Furthermore, it has been held by the authorities that there need not be any direct evidence as to the cause of the ignition of gas in order to hold a gas company responsible for an explosion. In *Luengene* v. *Power Co.* 86 Kan. 866, the court said (p. 870): "There was no evidence of the cause of the ignition of gas in the basement where the explosion occurred by which appellant was injured, and the jury so found. An instruction was asked to the effect that in the absence of such evidence the action must fail. This was refused, and an instruction was given to the effect that such evidence was not essential to a recovery if the proof was otherwise sufficient and the plaintiff in error was not

negligent.  *  *  *   The argument is that there was an efficient and direct cause intervening between the negligence of the company and the injury to the appellant; that the ignition was this proximate cause, and that the alleged negligence of the company only furnished the condition or gave rise to the occasion by which the injury was made possible.  [Citing authorities.]   The principle enunciated in the cases cited is not applicable to relieve a party from such results of his negligence as ought reasonably to have been foreseen.  A multitude of definitions has not made the meaning of the term 'proximate cause' entirely clear in every possible situation, and it is affirmed by a distinguished author that no fixed and immediate rule can be applied to all cases.  *  *  *   To hold that a man engaged in his usual work, exercising ordinary care and unwarned of any danger, must, when injured by such an explosion, prove what intervening hand or agency caused the spark is unreasonable and in many cases would be impossible.  A cause of injury is not too remote if, according to the usual experience of mankind, the result ought to have been apprehended."  In a somewhat similar case, *Moore* v. *Lanier,* 52 Fla. 353, the court said (p. 360) :  "In an action brought to recover damages for property destroyed through the negligence of another the declaration should allege facts showing the negligence complained of to be a proximate cause of the injury sustained.  Proximate cause is that which naturally leads to or produces, or contributes directly to producing, a result such as might be expected by any reasonable and prudent man as likely to directly and naturally follow and flow out of the performance or non-performance of any act.  [Citing authorities.]   If the injury complained of is traceable directly to the negligence and careless escape of gas into the storeroom, although the immediate cause of the explosion was ignition, the defendant is liable, under the allegations of the declaration, if the injury was one that could reasonably have been expected un-

der the attending circumstances. * * * Whether the defendant was responsible for the ignition or not is immaterial in this case, since the ignition was not an intervening independent cause but both it and the gas were present and directly contributing causes of the explosion. If the gas was present because of the negligence of the defendant, as alleged in the declaration, he is responsible for all the direct consequences of its presence that could reasonably have been anticipated. It cannot be said, as a matter of law, that ignition and explosion from some condition or cause would not naturally, probably and directly follow the escape of gas into a storeroom. * * * If the gas was present because the defendant did negligently and carelessly fit, install and equip the service pipe in the storeroom and it became ignited without the plaintiff's negligence contributing thereto and an explosion occurred, the defendant is liable for the damages resulting from the explosion even though he was not responsible for the ignition."

The Latin maxim *res ipsa loquitur* has frequently been discussed by this and other courts. In *Chicago Union Traction Co.* v. *Giese,* 229 Ill. 260, this court said among other things (p. 263) : "Many cases are to be found illustrating the application of this rule. In some of them it is said that the rule is an exception to the general rule that negligence will never be inferred, while in others it is not treated as an exception but is treated as an evidentiary rule, under which the charge of negligence is regarded as proven, *prima facie,* by proof of facts showing that the thing which caused the injury was under the management and control of the defendant or his servants, and that the accident is such as in the ordinary course of things does not happen if those who have the management use proper care. (Webb's Pollock on Torts, p. 550.) The more accurate statement of the law is, that negligence is never presumed, but that the circumstances surrounding a case where the maxim *res ipsa loquitur* applies amount to evi-

dence from which the fact of negligence may be found. In the case before us all of the elements of the accident were within the complete control of appellant, and the result is so far out of the usual course of things that there is no fair inference that it could have been produced by any other cause than negligence."

In *Illinois Central Railroad Co.* v. *Siler,* 229 Ill. 390, this court, after stating that what is the proximate cause of an injury is usually a question of fact, and citing authorities in support of that conclusion, said (p. 393): "It can only arise as a question of law or pleading when the facts are not only undisputed, but are also such that there can be no difference, in the judgment of reasonable men, as to the inferences to be drawn from them." The court then continued, on page 394: "Everyone is bound to anticipate the results naturally following from his acts. The appellant was therefore bound to anticipate, when the fire started, that the decedent would try to put it out. This she was doing, and the allegation is that she was using all due care and caution for her own personal safety. If in so doing the fire which appellant had negligently set out spread to and ignited her clothing without any want on her part of the care which an ordinarily prudent person would exercise under the circumstances, the appellant should be held to have anticipated such result as probable and to be liable therefor. * * * If the consequences follow in unbroken sequence from the wrong to the injury without an intervening efficient cause, it is sufficient if at the time of the negligence the wrongdoer might by the exercise of ordinary care have foreseen that some injury might result from his negligence. [Citing authorities.] The rule as to what constitutes proximate cause was considered in the case of *Atchison, Topeka and Santa Fe Railroad Co.* v. *Stanford,* 12 Kan. 354, and it was said: 'Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence, and if they are such as

might with reasonable diligence have been foreseen, the last result, as well as the first and every intermediate result, is to be considered, in law, as the proximate result of the first wrong cause. But whenever a new cause intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer and except for which the final injurious consequence could not have happened, then such injurious consequences must be deemed too remote to constitute the basis of the cause of action.' In *Milwaukee and St. Paul Railway Co.* v. *Kellogg,* 94 U. S. 469, it is said: 'The question always is, Was there an unbroken connection between the wrongful act and the injury,—a continuous operation? Did the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? * * * The inquiry must, therefore, always be whether there was any intermediate cause, disconnected from the primary fault and self-operating, which produced the injury.' "

In discussing the maxim *res ipsa loquitur* and its application to the case under consideration in *Gould* v. *Winona Gas Co.* 10 L. R. A. (N. S.) 889, the court said (p. 895) : "One of the essentials to the application of the maxim is clearly present. The agency was admittedly in the exclusive management of the defendant. Its condition was peculiarly within its knowledge, and within the possibility of its knowledge only. The other essential is also here. The result was such as in the ordinary course of things does not happen if those who have the management used proper care."

In *Sipple* v. *Laclede Gaslight Co.* 125 Mo. App. 81, the court said: "Upon the application of the sound and just principle stated, the courts have universally adjudged, in

the absence of an intervening agency appearing which nega-
tives the idea of negligence on the part of the gas com-
pany, that *prima facie* proof is made on the question of
negligence by showing the break or leak in the main, and
consequent escape of gas, which operated proximately to
cause the loss.    Such proof is sufficient to sustain the in-
ference of negligence by the jury."

In *Greaney* v. *Holyoke Water and Power Co.* 174 Mass.
437, it was held that the trial court rightly instructed the
jury as to the law on the subject where the instruction
stated:    "If what happened is of such kind and nature
that the power of explanation is in the hands of the party
against whom the case is brought, you have a right to say
they ought to come forward and explain it, otherwise not,—
that is, the burden of proof is upon the plaintiff to show
that the fault lies on the part of the defendant; and un-
less that evidence is brought forward of such a kind and
nature that the explanation of how it happened lies wholly
within the knowledge of the defendant, then the defendant
would not be called upon to explain."

In *Morrison* v. *Superior Light and Power Co.* 134 Wis.
167, the court said (p. 171):    "Counsel argue at length,
citing many authorities, to the effect that the existence of
a defect in a gas company's pipe allowing a dangerous es-
cape and accumulation of gas is evidence, unexplained, of
negligence.    The authorities so hold."

In *Coffeyville Mining and Gas Co.* v. *Carter,* 65 Kan.
565, the court said:    "The rule at common law is, where
an agent so introduced is controllable by care, attention or
science, he who receives the benefit must assume the respon-
sibility.    It is neither pleaded nor was an attempt made to
show contributory negligence on the part of deceased.    In
this condition of the record it was wholly immaterial how
the gas became ignited."

"The general rule is, that whoever does a wrongful act
is answerable for all consequences that may ensue in the

ordinary course of events, though such consequences are immediately and directly brought about by an intervening cause, if such intervening cause was set in motion by the original wrongdoer or was in reality only a condition on or through which the negligent act operated to produce the injurious result. Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence, and if they are such as might with reasonable diligence have been foreseen, the last result as well as the first, and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause. The question always is, Was there any unbroken connection between the wrongful act and the injury?—a continuous operation? Did the facts constitute a succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? The test is to be found in the probable injurious consequences which were to be anticipated,—not in the number of subsequent events and agencies which might arise." (22 R. C. L. 134, 135.)

It cannot be said that the result of escaping gas must necessarily be an explosion or a fire. That may be the result under certain circumstances and it may not be under other circumstances, and it depends upon what is shown to exist whether a *prima facie* case of negligence is made and the doctrine of *res ipsa loquitur* may be properly applied. A jury may find negligence from the breaking of a gas pipe and the consequent escape of gas, but it is for them to decide whether they will so find or not, and if there are other circumstances in the case they must weigh them all. (*Carmody* v. *Boston Gas Light Co.* 162 Mass. 539.) The negligence of the defendant must be the proximate cause of the injury, and it is the proximate cause thereof if it can be properly said to have produced the result complained of, in natural and continuous sequence, unbroken by any efficient intervening cause. (2 Thornton on Law of Oil and

Gas,—3d ed.—sec. 691.)   Where there is evidence that the negligence charged was the proximate cause of the injury the question is one for the jury, but whether there is any such evidence is a question of law.   (*Seymour* v. *Union Stock Yards Co.* 224 Ill. 579.)   The evidence should be sufficiently definite, in an action to recover damages for injuries alleged to be caused by negligence in permitting gas to escape, as not to leave the jury to speculate as to the cause of the injury.   There are many decisions, however, to the effect that a gas company is not relieved from liability for an injury caused by gas escaping from its pipes although the injury is due to the concurrent negligence of the company and a third person not in privity with the plaintiff.   (12 R. C. L. 912, 913.)

While there have apparently been conflicting decisions as to the presumption of outside agencies, and some courts have stated that they will take judicial notice that gas will not explode unless caused by some outside agency, as the introduction of fire or an electric spark, yet it is generally held that the occurrence of injuries which do not ordinarily happen when reasonable and proper care is taken to avoid them, affords a presumption of negligence and places upon the defendant the burden of proof that ordinary and reasonable care was taken to avoid the accident, where the cause of the accident is in fact unexplained.   (2 Thornton on Law of Oil and Gas,—3d ed.—secs. 688, 689.   See, also, the reasoning in *North Chicago Street Railway Co.* v. *Cotton,* 140 Ill. 486, and *Chicago City Railway Co.* v. *Carroll,* 206 id. 318.)   Generally the burden of proof is held to be on the plaintiff to establish the negligence of a gas company, but such proof may be either by direct or circumstantial evidence, and generally it is held that this is a question of fact for the jury in a case where the question is, What caused the fire?   (11 R. C. L. 995, and cases there cited.)   The origin of a fire has generally been held sufficiently established by inferences drawn from slight circum-

stantial evidence. *Pure Oil Co.* v. *Chicago, Milwaukee and St. Paul Railway Co.* 56 Mont. 266, and authorities there cited.

It is contended that instruction No. 1 for defendant in error omits to incorporate the element of the duty of defendant in error to exercise due care. Other instructions given to the jury state positively that there could be no recovery if defendant in error was guilty of negligence, and it is elementary that instructions should be considered as a series.

The other instructions complained of, to the effect that there was no evidence tending to show how the escaping gas became ignited, do not need specific consideration, as the questions of law involved therein have been sufficiently covered by what has already been said in this opinion.

The allegations of negligence found in the declaration are sufficient where proof is offered of circumstances from which an imputation of negligence necessarily arises. (*Feldman* v. *Chicago Railways Co.* 289 Ill. 25; *Chicago Union Traction Co.* v. *Giese, supra.*) In this connection we are not called upon to find whether the declaration here would be held good if tested by demurrer. The case was tried on the general allegations of the declaration, including that of ignition, and followed by proof of circumstances which raised a legitimate inference of ignition by reason of the escaping gas coming in contact with the fire in a lighted stove, and the declaration was sufficient under the reasoning of this court in *Sargent Co.* v. *Baublis,* 215 Ill. 428, and *Humason* v. *Michigan Central Railroad Co.* 259 id. 462, and cases cited.

The question whether or not plaintiff in error is liable on this record for the damages largely depends upon the controverted facts presented in the evidence. This court has often said that the weight to be given to the evidence must be submitted to the jury, and when their finding of fact has been approved by the trial and Appellate Courts,

the question whether the evidence is sufficient to support the verdict or whether the weight or preponderance of the evidence is against the verdict of the jury cannot be raised . here. *Reiter* v. *Standard Scale Co.* 237 Ill. 374, and cases cited.

We find no reversible error in the record. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*