19490. CANDLER *v.* AUTOMATIC HEATING INC.

DECIDED JULY 13, 1929. REHEARING DENIED AUGUST 24, 1929.

*Tye, Thomson & Tye,* for plaintiff.
*Branch & Howard, Troutman & Troutman,* for defendant.

BELL, J. Walter T. Candler brought a suit for damages against Automatic Heating Incorporated, because of injury to his dwelling house and furnishings as the result of a fire originating in the basement of the house, and alleged to have been caused by a heating apparatus manufactured by the American No Kol Company, and purchased by the plaintiff from and installed by the defendant Automatic Heating Incorporated. The American No Kol Company was also made a party defendant, but that company filed a plea to the jurisdiction, which was sustained, and the case proceeded only as against the other defendant. At the conclusion of the evidence adduced upon the trial the court entered an order of non-suit, and the plaintiff excepted.

The petition as amended contained, among others, the following allegations: On February 28, 1927, the defendant Automatic Heating Incorporated installed in the home of the plaintiff the heating apparatus in question, as a means of furnishing heat in the plaintiff's residence. From the very outset the machinery or equipment would not work satisfactorily, and frequently stopped operating, so that petitioner was forced upon repeated occasions to call the defendant to investigate and correct the defects therein, which prevented its operation. The apparatus was intended to be fueled with oil and to be automatic in action. After its repeated failure to operate as it should, the plaintiff requested the defendant to remove the apparatus and to return to him the purchase-price, but the defendant asked for another opportunity to correct the defects, so as to cause it to operate satisfactorily. Finally, on January 29, 1928, the heating system again failed to operate in a proper manner, and as a result thereof the oil used therein as fuel overflowed upon the floor of the furnace room and was set on fire.

The petition contained the following allegations descriptive of the defects complained of:

(1) "That the aquastat or thermostat which was connected with the hot-water storage tank did not correctly register temperature of water in tank and did not cause the machine to cut off heat when said water reached a temperature of 180 degrees, at which point it was designed to cut off."

(2) "That the failure of the aquastat or thermostat, which was part of said machine as designed, furnished, and installed as part of equipment by the defendant, caused the water in the tank to become excessively hot and finally turn to steam, causing the explosion of a water-pipe in the boiler-room and flooding the boiler-room with water, which also tended to cause the equipment to become further disarranged and thereby causing the fire."

(3) "When the water in the tank reached the temperature of 180 degrees the thermometer, thermostat, oil-pump and the revolving switch and each of them failed to perform its proper function and shut off the heat, but allowed the oil to continue to be pumped into the furnace after the heat had become excessive and after the water in the tank had turned into steam, and to continue with this excessive heat until the steam had passed into the water-pipes and

caused them to burst and explode, and said mechanism failed to shut off the oil."

The petition further alleged that the plaintiff was guilty of no negligence whatever in the care of the apparatus, but was operating it in the way and manner directed by the defendant, and the fire was caused by the defects in the machinery and by defects in methods of installation, which defects were unknown to the plaintiff, but were the result of negligence and lack of care and skill on the part of the defendant. There was attached to the petition an itemized statement of the damage alleged to have been sustained, amounting to $3,769.93, for which the plaintiff prayed judgment.

Since the case is here upon exceptions to the grant of a nonsuit, the sole question for determination is whether the evidence was sufficient to prove the case as laid. We are not concerned with whether the petition sets forth a cause of action, or with whether the evidence proves one, and express no opinion in regard to either of these quesitons. *Rountree* v. *Seaboard Air-Line Ry. Co.*, 31 *Ga. App.* 231 (120 S. E. 654). We think that the evidence would have authorized a finding in favor of the truth of the allegations of the petition, and, thus, that it was error to award a nonsuit.

It appeared, from the evidence, that the plaintiff purchased the heating apparatus from the defendant as a distributor, and that the defendant undertook to install it in such a manner that it would operate satisfactorily and without injury to the plaintiff's property. It was shown that on many occasions the apparatus had given trouble and that the defendant had been frequently called to correct the defects therein. Several explosions had occurred in the furnace-room prior to the occasion in question, and the evidence would have authorized the inference that these explosions were due either to inherent defects in the machinery, or to its improper installation. A service man of the defendant had been called to the furnace-room on the day previous to the fire, and it appeared that no others, either the plaintiff or his employees, ever handled or interfered with the operation of the device or sought to correct any of the defects supposed to exist therein.

The only witnesses who testified were Ernest D. Ivey, the architect who designed the residence of the plaintiff, including the heating system, the plaintiff himself, and his colored porter John Oglesby.

The following additional facts were developed by the evidence: The hot-water heating system was composed of a boiler containing water and the oil burner furnished and installed by the defendant. No other method of heating the water in the boiler was provided except the oil burner. One of the safety devices connected with the system was the arrangement of cold-water pipes, so that in the event of excessive heat accumulating in the tank, the hot water and steam would back up through the cold-water pipes, and thus relieve the pressure. This was the plan and design of Ivey, the architect, but the automatic heater obtained from the defendant was also equipped with an automatic device known as an aquastat, which was intended automatically to cut off the fuel when the water in the boiler attained a temperature of 180 degrees Fahrenheit.

It will be remembered that the petition alleged that this instrument failed to operate properly and allowed the water to reach an excessive temperature, so that steam accumulated in the pipes connected with the boiler to the extent that the pipes exploded, with the result that the appliances were disarranged, and that the fire originated because of this disturbance. According to the evidence, if the aquastat had operated properly, the water in the boiler would never have become heated to the extent of causing such explosion; and the testimony tended to show that the explosion was caused in the manner claimed by the plaintiff. The pipe burst at a point near the boiler, and, according to the testimony of Ivey, the bursting was caused from pressure on the inside. Ivey was called to the scene within a short time after the fire, which occurred early in the morning, and examined the premises, including the pipe just referred to. It further appeared from his testimony that the insulation had burned from the boiler and that several of the pipes and conduits had expanded. From his testimony it appeared that the fire was concentrated around the boiler, because the floor was constructed of concrete and this was crumbled for two or three feet around the boiler, with which the automatic burner was connected. The evidence tended to show that this condition of the floor had not existed previously, and was general throughout the basement.

There were no combustible materials in the basement and no one had access thereto except certain persons whose conduct therein was fully accounted for as having nothing to do with the apparatus

in question. It did appear that the basement contained electric wires and batteries used in connection with the house telephone system and the various door-bells and other signalling devices in the residence. While the exact location of these things was not shown, and there was no testimony as to the probability or improbability of a fire originating therefrom, it would seem more likely that the fire would originate from the oil heater, the burner of which undoubtedly had to be ignited in order to heat the water in the boiler for the purposes intended.

It is suggested by the counsel for the defendant that if defects existed in the heating system, it was the fault of Ivey, the architect, whose plan was adopted and who supervised the installation. . Assuming that there was fault upon the part of the architect, this alone would not necessarily annul the effect of any negligence on the part of the defendant in improperly installing the apparatus or in failing to maintain it in the proper manner. If the evidence shows that the defendant itself was negligent in the particulars alleged in the petition, there would not be a failure to prove the case as laid merely because the evidence might establish additional negligence on the part of some other 'person.

It is further said that the evidence fails to show that the aquastat failed to operate properly, since no witness testified either that the water reached a temperature of exceeding 180 degrees or that the aquastat did not correctly register the temperature and cut off the heat at that point. It is true there was no direct testimony upon this issue, but from the testimony of Ivey the jury could have found that the explosion would not have taken place except in case of a temperature in the boiler exceeding 180 degrees; and since it might thus have been inferred that the temperature reached a higher point, this fact, if established, would have 'tended to show that the aquastat did not perform its proper function.

Counsel for the defendant attach much importance to the testimony of Ivey that the pipe which exploded was a hot-water pipe and that it was exploded because of the fire. It is thus contended that the evidence shows that the cause of the explosion was not the expansion of the steam from the hot water in the tank, but was the fire itself. Assuming that the testimony of Ivey here referred to may have been inconsistent with other parts of his evidence, and might tend in a way to disprove the plaintiff's case, the plaintiff is

not bound by any part of his evidence, and if from his testimony as a whole the jury could have inferred facts favorable to the plaintiff, the court could not as a matter of law deprive the plaintiff of the benefit of such inference merely because of inconsistencies in the testimony of the witness. He was not a party to the case, and his testimony is to be construed with reference to the right of the plaintiff, and not necessarily in the same light as if the witness were a party. *Reaves* v. *Columbus Electric & Power Co.*, 32 *Ga. App.* 140 (3, 4) (122 S. E. 824).

But it is pointed out for the defendant that the plaintiff himself testified that the "fire had burst the pipe." This was a mere conclusion by a non-expert witness, and, although the witness was the party suing, the case was such that it necessarily depended upon circumstantial evidence, since the fire was not discovered until practically all damage had been done, and none was able to state definitely what was its cause. The rule that the testimony of a party is to be construed most strongly against him need not be applied by the jury to mere conclusions of a witness, when upon a consideration of all the evidence a different conclusion may be authorized, and especially is this true where the witness is not testifying as an expert.

The fact that the bursting of the pipes on previous occasions had not caused a fire does not conclusively disprove the plaintiff's contention as to the origin of the fire on the occasion in question. *Chenall* v. *Palmer Brick Co.*, 117 *Ga.* 106, 110 (43 S. E. 443); Waterhouse *v.* Schlitz Brewing Co., 12 S. D. 397 (81 N. W. 725, 48 L. R. A. 157).

The evidence supported the petition as to the extent of the damage, and we are constrained to the view that the jury should have been allowed to pass upon the question as to whether the fire was caused in the way and manner alleged in the petition. No one would contend that the plaintiff was bound to make proof of his allegations by direct testimony, and it is our opinion that the evidence was such as to have authorized the jury to apply the maxim res ipsa loquitur.

"Where something unusual happens with respect to a defendant's property over which he has control, and by such extraordinary occurrence a plaintiff is injured (the occurrence being such as does not happen if reasonable care has been used), an inference may

arise that the injury was due to the defendant's negligence. The maxim res ipsa loquitur is a rule of evidence, to be applied by the jury, if applied at all. The inference which may in some cases arise from an unexplained occurrence which has worked an injury to another, that the defendant who had in charge the instrumentality which was the direct cause of the injury was guilty of negligence, may or may not be drawn by the jury; but, like the fact of negligence or no negligence, the inference which the jury may be authorized to draw is peculiarly an inference of fact. . . In the absence of any satisfactory explanation that the occurrence was accidental or providential, or other sufficient explanation, if something unusual happens in respect to a defendant's property or to something over which he has control, whereby the plaintiff is injured, and the natural inference on the evidence is that the unusual occurrence is due to the defendant's act, the occurrence, being unusual, is said to speak for itself that such act was negligence." *Sinkovitz* v. *Peters Land Co.,* 5 *Ga. App.* 788 (2) (64 S. E. 93). See also *McDonnell* v. *Central of Georgia Ry. Co.,* 118 *Ga.* 86 (44 S. E. 840) ; *Palmer Brick Co.* v. *Chenall,* 119 *Ga.* 837 (47 S. E. 329) ; McClure *v.* Hoopeston Gas Co., 303 Ill. 89 (135 N. E. 43, 25 A. L. R. 250).

Although the heating apparatus was the property of the plaintiff and was situated upon his premises, the evidence would have authorized the inference that, as to installation and maintenance, it was virtually in the control of the defendant company, and tended reasonably to exclude the existence of any cause of the fire except one due to the improper operation of the apparatus, or to negligence on the part of the defendant in installing or maintaining it.

In *Southern Railway Co.* v. *Herrington,* 128 *Ga.* 438 (57 S. E. 694), where the question was whether a fire which damaged the plaintiff's property was caused by a spark from a locomotive, the evidence relied on to establish the fact was entirely circumstantial. The Supreme Court said : "It appears from the evidence that two engines of the defendant had passed near the land, and in a very short time thereafter the fire originated about fifty feet from where the engines passed. There is nothing in the evidence to indicate that the fire could have originated from any other source. This was sufficient to authorize a finding that the fire originated from a

spark emitted from a locomotive." See, to the same effect, *Greene* v. *Central of Georgia Ry. Co.*, 130 *Ga.* 375 (60 S. E. 861).

Counsel for the defendant suggest that the action was in tort and that the plaintiff can recover only upon the allegations of negligence made in the petition. It is unnecessary to decide whether the petition complains of a tort or of a breach of contract, since that question is not raised for determination under the writ of error. It is true, however, that the plaintiff's case must fail unless he has made proof of the allegations of his petition. This, we think, was a jury question, under the evidence, and we must, therefore, reverse the judgment of nonsuit.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*