ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY v. YOUNG.

Opinion delivered November 21, 1927.

1. RAILROADS—NEGLIGENCE IN FRIGHTENING HORSE.—In an action against a railroad company by one injured when thrown from a horse, the question whether the negligent and careless letting off of steam by the engineer or fireman caused the horse to become frightened, and whether the horse's becoming frightened resulted in the plaintiff's injury, *held* for the jury.

2. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—The Supreme Court will not disturb a verdict of the trial court, where there is substantial evidence to support it, although the evidence introduced is conflicting.

3. RAILROADS—CONTRIBUTORY NEGLIGENCE.—In an action against a railroad company by one claiming to have received injury by reason of the horse which he was riding becoming frightened by the letting off of steam by the railroad engine, whether it was proper for plaintiff to sit on his horse near the standing engine was a question for the jury.

4. TRIAL—ASSUMING DISPUTED FACTS IN INSTRUCTION.—In an action against a railroad company by one injured by being thrown from a horse frightened when the engine let off steam, an instruction assuming that the injury was not caused by the running of the train *held* properly refused.

5. RAILROADS—ACT IN RUNNING TRAINS.—An engineer's or fireman's letting steam escape while starting or preparing to start a train, resulting in injury, is an act of running the train within the meaning of Crawford & Moses' Dig., §§ 8562 and 8575, relating to the railroad's liability for injuries caused from running a train.

6. RAILROADS—ACTS DONE IN RUNNING TRAIN.—Acts done by persons in charge of an engine in either stopping or starting a train, *held*

to be acts done in running the train, within the meaning of Crawford & Moses' Dig., §§ 8562 and 8575, relating to a railroad's liability for injuries caused by acts in running trains.

Appeal from Craighead Circuit Court, Jonesboro District; *G. E. Keck,* Judge; affirmed.

*E. T. Miller, E. L. Westbrooke, Jr.,* and *E. L. Westbrooke,* for appellant.

*J. F. Gautney, R. H. Dudley* and *Denver L. Dudley,* for appellee.

Mehaffy, J.  Appellee brought this suit in the Craighead Circuit Court against appellant, alleging that, in July, 1923, he approached the defendant's track near Nettleton on horseback, intending to cross the track, but a passenger train had stopped at the station, and the engine and part of the train obstructed the crossing. He remained on his horse about sixty-five feet from the engine, and he alleges that the servants of appellant, while he was sitting on his horse, carelessly opened the valves on the engine and negligently permitted large quantities of steam to escape in the direction of and on the horse, causing it to take fright, resulting in his being thrown and the breaking of his ankle, and for the injuries thus received he brought this suit.  There was a jury trial, a verdict for the plaintiff, and the defendant has appealed.

The evidence is substantially as follows:  Appellee is sixty-one years old, lived at Nettleton, and had been plowing, and was on his way home at 11:30 in the morning on July 11, 1923.  He rode towards the crossing, and stopped about sixty-five feet from the main line.  He was riding a mare that was gentle, and about nine years old, and he was in the habit of crossing the railroad four times a day.  The train stopped on the crossing, and the engineer was looking at appellee, and pulled something and the steam came out, and the mare threw appellee and broke his ankle.  Appellee had been sitting there only a minute when the steam came out and frightened the mare.  According to appellee's testimony, the steam came clear out to where he was and covered the mare. He was in plain view of those in charge of the engine.

There is no controversy about the amount of the verdict, and it is unnecessary to make any statement with reference to the extent of the injury.

The engineer, who had had 35 years' experience as a locomotive engineer, stated that the only place the steam could come out on the right side of the engine is at the right cylinder cocks, and on the left side, the fireman's side, is the blow-valve, but, to open it, a man would have to get on the running-board. Neither the engineer nor the fireman got out of the locomotive at Nettleton. No steam was let out of the engine. To open the valve to cover one with steam and make a loud noise one would have to get out on the front end of the engine and open the mud-valve. That was not done. The engineer testified that, when he started from Nettleton, he put the reverse lever in full stroke and opened the throttle. The train was headed towards Jonesboro. When the train started he looked back to see if trespassers were on the tender or mail-car, and he saw a horse wheel and some one fall off. On a hot sunshining day steam makes no clouds. It cannot be seen. When the cylinder cocks are opened there is just a little noise, and the steam cannot be seen. He said on a day like that the steam could not be seen, and no steam was blown out.

The fireman testified substantially the same as the engineer, and also said that it is only after a long stop that it is necessary to open the cylinder cocks, and that the cylinders were 40 feet from the crossing and 18 inches from the ground.

Defendant's witnesses did not know what frightened the horse.

There was other testimony about the accident, and as to the manner in which the steam escaped, and the conduct of the agents and servants of the appellant, and that of the plaintiff also. There is a conflict, and we deem it unnecessary to set out the testimony, further than to show the issues submitted to the jury.

Appellant urges, first, that the evidence is not legally sufficient to support the verdict. Appellee testified that

he was riding a gentle animal; that he had been plowing, and left the field about eleven-thirty, and approached the railroad crossing, saw the train approaching, and stopped his horse. That the animal he was riding was about eight or nine years old, and very gentle. Any member of the family could drive her. She had been around trains frequently. That appellee crossed the tracks with her, going to and from work, two or three times daily. Never was frightened before. The train stopped with the engine on the highway crossing. The engineer was looking around and was looking at appellee, when he pulled something, and the steam came out and scared the mare, and she threw him over her head. A good deal of steam came out and covered the mare. Came clean out where we were. Appellee was in plain view of the men on the engine, and they saw him. The steam came out in a way that he couldn't see anything. The engineer was half laughing and looking at appellee, and when he did that he did it out of a pure spirit of devilishness or hellishness. Cinders hit the mare. The noise was loud enough to be heard 1250 feet away.

Although some portions of this testimony of the appellee was denied by witness for appellant, it was sufficient evidence upon which to base a verdict. In other words, the evidence on the part of appellee tended to show that the servants of the appellant negligently and carelessly frightened his horse, and that this was the cause of his injury. This court has many times held that where there was any substantial evidence to support the verdict, this court will not disturb it. That is the settled rule of this court, and it is unnecessary to call attention to the authorities. When the evidence is conflicting, the verdict of the jury will not be disturbed by this court.

Appellant's next contention is that the court should have given the instructions requested by the defendant. Appellant's first instruction is as follows:

"No. 1. It is the duty of railroads to exercise reasonable and ordinary care to observe travelers near crossings, and it should refrain from doing any heedless

or unnecessary act calculated to frighten horses bearing travelers rightfully near crossings. But it is also the duty of the traveler not to unnecessarily or negligently place his horse in a position where the horse may become frightened by the escape of steam, or other noises which engines necessarily make, even when they are operated with due care, nor to sit on his horse in a position where he cannot protect himself from falling off should the horse take fright at such escape of steam or other noises.''

It was, of course, improper to tell the jury that it was the duty of the travelers ''not to unnecessarily or negligently place his horse in a position where the horse may become frightened by the escape of steam or other noises which engines necessarily make, even when they are operated with due care, nor to sit on his horse in a position where he could not protect himself from falling off should the horse become frightened at such escape of steam or other noises.'' It would have been improper for the court to tell the jury whether it was proper or improper for a person to sit on his horse as plaintiff did, but he should have submitted these questions to the jury, and it was the jury's duty to determine whether the conduct of the appellee at the time was negligent or not, and to determine also whether defendant's servants were guilty of negligence. The instructions requested by appellant were covered by instructions given by the court.

Instruction No. 2, requested by the defendant, was properly refused. The injury in this case was caused by the running of a train, and instruction No. 2 assumed that the injury was not caused by the running of a train.

Appellant complains at the refusal to give its instruction No. 3 as requested, and to the court's giving it as modified. The modification consisted in adding the following words: ''in a degree equal to or greater than that of the employees in charge of the said train, if you find they were negligent.''

''In all suits against railroads for personal injury or death caused by the running of trains in this State,

contributory negligence shall not prevent a recovery where the negligence of the person so injured or killed is of a less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of; provided that, where such contributory negligence is shown on the part of the person injured or killed, the amount of recovery shall be diminished in proportion to such contributory negligence." C. & M. Digest, § 8575.

As to whether this was a proper modification of the instruction and as to whether it was proper to give it as modified, depends upon the meaning of the words "running of a train." It was said by the Supreme Court of Georgia:

"It is urged that, if the injury occurred as alleged and proved by the plaintiff, this is not a case in which the statutory presumption of negligence arises. Section 2321 of the Code declares a railroad company shall be liable for any damage done to persons, stock or other property by the running of the locomotives or cars or through the machinery of such company, or for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company. The argument in that case, was inasmuch as the car was standing still when the passengers were directed to leave it and go to another car, the injury was not done by the running of the car or by any person in the employment and service of the company. This argument would be sound if made in regard to an injury which was entirely disconnected from the running of a car, or which was not produced by some direct act of a person in the employment of the company. * * * But it would be too narrow and restricted a view to hold that if, while passengers are in transit upon a car, it was stopped for one or more of them to alight, or to be transferred to another car, and the injury resulted to one of them by reason of turning out the lights in the car or

causing it to jerk while the passenger was alighting, this was not done by the running of the car, or by a person in the service of the company, if such person put out the light or caused the jerk. Such an occurrence would be a part of the actual transit. The running of the car, as used in the section of the Code above quoted, is not confined to a mere collision with a person on the track. An unnecessary jerk, causing an injury to a passenger while alighting, is a part of the running, within the reason and spirit of the statute." *Georgia Railway & Electric Co.* v. *Reeves*, 123 Ga. 697, 51 S. E. 610.

See also *Smith* v. *Atlantic Coast Line Railway Co.*, 5 Ga. App. 219, 62 S. E. 1020, and *Seaboard Air Line Ry. Co.* v. *Bishop*, 132 Ga. 71, 63 S. E. 1103.

In the last case the court said:

"The expression 'by the running of the locomotives or cars,' will not be given a narrow and contracted meaning, but will be reasonably construed in the light of the legislative purpose and intention as evidenced by the entire statute. To illustrate: A train pulls up to a station, and stops. A passenger in alighting is injured because the step of the car is broken or wanting. Technically speaking, the train is not 'running' in the sense of being in actual motion, at the instant the passenger is alighting. But he is injured by the running of the train in the sense that it is being operated, and that, as a part of such operation, the company must allow passengers proper opportunities for alighting."

The court then gives numerous illustrations of injuries occurring while the train is not in actual motion, but the injury occurs by something that is really a part of the operation, something the company must do in order to operate the train.

We hold here that the running of a train should be given a reasonable construction. In the case at bar the letting steam escape, as it is said was done in this instance, was done, according to the contention of the appellant itself, if done at all, in starting of the train, and, if true, then we hold that this was done in the running of the train.

Section 8562, C. & M. Digest, provides: "All railroads which are now or may be hereafter built and operated in whole or in part in this State shall be responsible for all damages to persons and property done or caused by the running of trains in this State."

This court, in construing the statute last quoted, said, among other things, that the damages referred to meant those produced by moving trains. There is no reason for supposing the. Legislature used the word "running" in any other than its narrow and restricted sense of causing trains to be moved or propelled. *St. L. S. F. Ry. Co.* v. *Cooksey,* 70 Ark. 481, 69 S. W. 259. The court there had under consideration a question very different from the one in this case. The train was not in motion, and the engineer or fireman or persons who run and operate the engine and train were not the ones whose acts were complained of, but the negligence alleged in that case was that an employee was wetting the coal on the tender while the train was standing still, and carelessly turned the hose so as to throw a stream of hot water on the plaintiff, whereby he was severely burned. That act on the part of the employee was in no way connected with the running of the train. But in this case it was the engineer or fireman—persons who were running the train—in the act of starting or preparing to start the train, letting the steam escape, and it is alleged that this was negligence or carelessness. The court further said, in the case last referred to, that the rule had its origin in the inability of the plaintiff to prove his injuries to have been the result of negligence in cases where the facts lie peculiarly within the knowledge of those who produce the injury. That may be said to be the case where the injury is caused by the actual running of the train. Those intrusted with the work of propulsion alone can know, as a general thing, what they have or have not done in that regard, while the injured party or others can only surmise or infer as to what the trainmen actually did by the circumstances and resultant conditions in any given case. * * * This work is in the

hands of experts, who alone are peculiarly cognizant of the facts connected with such work. The statute is not applicable to cases of the kind under consideration, and the instruction should not have been given."

It will be observed in the case of *St. L. & S. F. Ry. Co.* v. *Cooksey, supra,* that the act complained of was in no way connected with the running of the train. If the train was actually moving at the time the steam escaped it would not be contended that this was not caused by the running of the train. Certainly, when the parties in charge of the engine are either starting or stopping the train, anything done by them is done in running the train. It is done by those intrusted with the work of propulsion. It was done in this case in the act of starting the train, and we hold that the statute applies to any act of this kind, and it is distinguished from the case in the 70 Arkansas in that in that case it had no connection with the running of the train, and the act complained of was by an employee who had no connection himself with the operation of the train.

The only question in this case is the construction of the statute, the meaning of the words "running of a train," and the court's instructions, as a whole, properly directed the jury, and there was conflict in the evidence, and, since there was some substantial evidence to support the verdict, it will not be disturbed by this court. The judgment is therefore affirmed.